UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re.  MICHAEL JACQUES JACOBS,                    bankr. no. 19-12591

      Debtor.

## OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR THE ABANDONMENT OF PROPERTY; MOTION FOR IN REM RELIEF PURSUANT TO 362(d)(4) BY DLJ MORTGAGE CAPITAL, INC.

COMES NOW Michael Jacques Jacobs by his attorney, James Clay Hume, JD, (HUME LAW FIRM) and in response to the above referenced Motion, Debtor states:

### PRELIMINARY STATEMENT

1.  Debtor filed a voluntary Chapter 11 bankruptcy petition on November 13, 2019.

2.  DLJ claims to be a creditor in this Bankruptcy Case while also claiming to be purchaser of the loan on Debtor's residence ("Property").

3.  Debtor asserts that Creditor does not have standing under New Mexico law to enforce the Note and Mortgage.

4.  DLJ is not a party to this action as DLJ is neither listed as a creditor on Schedule D of Debtor's petition nor has DLJ filed a Proof of Claim as required by Federal Bankruptcy Procedures Rule 3003(c)(2).

5.  DLJ is not an established Party in Interest as defined in 11 U.S. Code §1109(b).

6.  The Motion for Relief is not proper as Fed. R. Civ. P, Rule 12(b)(7) requires that the Motion must be denied when the movant fails to join a party under Rule 19.  DLJ failed to join either fifty percent holder (50%) Selene CS Participation LLC ("Selene LLC") or co-Plaintiff Selene Finance LP ("Selene").

7.      Debtor asserts that the DLJ and Selene District Court judgment was in error as Selene is not the contracted fifty percent (50%) holder.

8.      The Motion for Relief is not proper in that Fed. R. Civ. P, Rule 12(b)(6) authorizes the dismissal if movant does not state a claim upon which relief can be granted.

## BACKGROUND

9.      Debtor's non-filing spouse, Ruby Jacobs ("Spouse") executed an Adjustable Rate Note ("Note") dated November 9, 2005 in the amount of $308,000 to Encore Credit Corp., a California Corporation ("Encore"). (See **Exhibit A** to Motion for Relief).

10.     As security for the note, Debtor and his spouse gave a Mortgage dated November 5, 2009 ("Mortgage") on the Property to Encore. (See **Exhibit B** to Motion for Relief).

11.     There are two (2) Endorsement Allonges and an Allonge attached to the Note. The first Endorsement Allonge contains a specific endorsement from Encore, to Impac Funding Corporation ("Impac"). The second Endorsement Allonge contains a specific endorsement from Impac to EMC Mortgage Corporation ("EMC"). The third Allonge contains an "in-blank" endorsement by EMC. There are no dates of execution on any of the Allonges.

12.     There is a recorded document purported to be an "Corporate Assignment of Mortgage," dated February 25, 2011 filed in the Official Records of the Bernalillo County Clerks' Office on February 28, 2011 as ins# 2011019791 ("AOM1"). (See **Exhibits C and D** to the Motion for Relief).

13.     AOM 1 purports to transfer the Note and Mortgage by MERS on behalf of Encore to Nationstar Mortgage, LLC ("Nationstar").

14.     There is a recorded document purported to be an "Corporate Assignment of Mortgage," dated April 28, 2011 filed in the Official Records of the Bernalillo County Clerks'

Office on May 03, 2011 as ins# 2011041902 ("AOM 2"). (See **Exhibits C and Exhibit D** to the Motion for Relief)

15.    AOM 2 purports to transfer the Mortgage from MERS on behalf of Encore Credit Corp., a California Corporation to US Bank National Association ("US Bank"), not in its individual capacity but solely as Trustee for the Holders of Maiden Lane Asset Back Securities I Trust 2008-1 ("Maiden Trust").

16.    There is a recorded document purported to be an "Assignment of Mortgage," dated April 19, 2013 filed in the Official Records of the Bernalillo County Clerks' Office on April 19, 2012 as ins# 2013053092. ("AOM 3"). (See **Exhibits C and D** to the Motion for Relief)

17.    Movant asserts MERS transferred the Mortgage to Nationstar as of February 25, 2011. MERS had no interest in the Mortgage to transfer to US Bank as Trustee of the Maiden Trust on April 18, 2011.

18.    Maiden Trust is governed by the Trust and Master Servicing Agreement ("MSA") for the Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1. The MSA requires transfers to the Maiden Trust be completed by the Closing Date of the Trust, June 26, 2008, by the Trust Depositor Bear Stearns Commercial Mortgage, Inc. ("Bear Stearns"). The Debtor's Mortgage was transferred to US Bank as Trustee for the Maiden Trust in 2011, long after the Closing Date of the Trust. In addition, the transfer to the Trust was attempted by MERS who is not a party to the MSA and is not the Trust Depositor.

19.    A fundamental principle in New Mexico mortgage law is that a foreclosing party must have the right to enforce the underlying note to prevail in a foreclosure action. Debtor asserts that Creditor is not entitled to enforce the Note and Mortgage.

20. Creditor filed an action for foreclosure in 2012, Case # 2012-09237, in the Second Judicial District Court in Bernalillo County ("Foreclosure Case") on October 5, 2012, over six (6) months before AOM 3 was recorded in the Public Records of Bernalillo County assigning the Mortgage to Creditor. Debtor asserts that Creditor did not have standing to file the Foreclosure Case in October 2012. See *Bank of New York v. Romero*, 320 P.3d 1(2014) and *Deutsche Bank National Trust Co. v. Johnston*, 334 P.3d 425 (2014).

21. Following dismissal by the District Court, the Foreclosure Complaint was amended on October 24, 2014 by Creditor to incorrectly add Selene as a co-Plaintiff with Creditor asserting Creditor was participating in a joint venture with Selene called Selene LLC and that that the Selene LLC was the co-owner of the Note. Debtor requests that the Court note that neither Selene nor Selene LLC has filed a Claim in this Bankruptcy Case. The two plaintiffs claimed to be fifty percent (50%) holders of the Note. Therefore, the ability of each entity to enforce the Note pursuant to the UCC ends as they are removed from operation of the UCC for purporting to transfer less than the entire instrument. To wit, "If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this article and has only the rights of a partial assignee." NMSA 1978 § 55-3-203(d).

22. Creditor submitted a Lost Note Affidavit in the Foreclosure Case.

23. There is no AOM from the original lender Encore to Impac or from Impac to EMC recorded in the Public Records of Bernalillo County, New Mexico.

24. The Note was transferred by the original lender Encore to Impac and by Impac to EMC pursuant to the endorsements on the Allonges to the Note. Effectively MERS could not

transfer the Note and Mortgage to Nationstar and then later the Mortgage to US Bank as Trustee for the Maiden Trust when the Note had been transferred to Impac and then to EMC.

25.     Further, it is questionable whether the endorsements on the Allonges to the Note were made by persons with authority to transfer the negotiable instrument in question. See *Casarez v. Garcia*, 1983-NMCA-013, ¶ 16, 99 N.M. 508, 660 P.2d 598 ("the indorsement, if unauthorized, was inoperative to pass title to the instrument…").

26.     Debtor alleges that multiple fraudulent conveyances took place.  Debtor retained a licensed private investigator Joseph Esquivel, Jr. ("Esquivel") of Mortgage Compliance Investigators to do a review of the Note and Mortgage and determine who is the true holder and owner of the Loan, if there is one. (See attached Affidavit of Joseph Esquivel, Jr. as **Exhibit 1)**.

27.     Using Loan Level Data from an independent third party that specializes in locating VA, FHA and GSE loans, Esquivel determined that Debtor's Loan was identified as an asset in the Encore Credit Receivables Trust 2005-2 Trust.  The Loan Level data then indicates that the Loan was transferred to the Maiden Trust.  Though AOM 3 indicates that the Loan was transferred to DLJ, the Loan is still an asset of Maiden Lane 2008-1 Trust.

28.     As indicated herein above, notwithstanding the foreclosure judgment entered in favor of Creditor and Selene, it is impossible to tell who the party entitled to enforce the Note and Mortgage is at this time.  It appears the Loan is still held in the Maiden Trust and they may be the party entitled to enforce the Note and Mortgage but even that isn't clear given there are no AOM's recorded to or from Impac and EMC.

29.     On the day following the ruling of the District Court, then-counsel for Debtor filed a notice to the New Mexico Court of Appeals, Case No. A-1-CA-37446 ("Appeal") against DLJ and Selene, which is currently in inactive status due to Debtor's bankruptcy.

30.     There are three points of the Debtor's Appeal:

     a.) DLJ and Selene had no standing to file the lawsuits.

     b.) the Lost note; and

     c.) 50/50 ownership where only a one hundred percent (100%) owner has the right to foreclose (NMSA 1978 § 55-3-203(d)).

31.     Furthermore, Debtor intends to file a lawsuit (see **Exhibit 2**) against DLJ, Selene and others due to the recent discovery of new and material information as evidenced by expert witness Esquivel.

32.     Moreover, Debtor now has the final Chain of Title fraud report as evidenced by Esquivel's Affidavit, which will be further evidence in Debtor's upcoming adversary proceedings.

<u>**PREVIOUS BANKRUPTCIES WERE NOT PART OF A SCHEME**</u>

33.     Contrary to DLJ's assertion that Debtor's Bankruptcy Petition is part of his "scheme to hinder and/or delay," this is a frivolous assertion only meant to put Debtor in a false light.  In case law offered by DLJ, one included a finding that a debtor did engage in a "scheme to delay".  However, that is not the case with this bankruptcy.

34.     Explanations of previous bankruptcies by Debtor and Spouse are as follows:

    a.  November 12, 2012 for Debtor:  In dealing with the potential loss of Debtor's Los Angeles home, his then-attorney suggested that he file bankruptcy.  Debtor had never filed before and was contrary to that notion.  This case did not have a connection with DLJ, as Debtor was only trying to save his Los Angeles home, which resulted in a negotiated short sale.  Debtor then informed the court he was not continuing with the bankruptcy and halted the filing of any further documents.

b. March 27, 2019 for Debtor:  Originally filed *pro se*.  Upon advice of current counsel, that bankruptcy was dismissed and re-filed as a Chapter 11.

c. November 13, 2019 for Debtor:  Current bankruptcy.

d. 1999 for Spouse (Discharged):  Personal Chapter 7 bankruptcy before Debtor and Spouse met.

e. October 29, 2011 for Spouse (Discharged):  Filed because of the potential loss of Debtor and Spouse's film studio and business.  Nationstar was the servicer of the Property at the time of filing.

f. February 28, 2012 for Spouse:  For re-organizing Debtor and Spouse's business. Without consultation, their bankruptcy attorney allowed the stay removed from the film studio and they lost their business.  Debtor and Spouse agreed to dismissal of the case.  This case did not involve DLJ.

g. July 24, 2018 for Spouse:  This petition was filed during the Appeal as DLJ was able to schedule a foreclosure sale without objection from Debtor's attorney. Spouse was hospitalized forcing dismissal of the case.

h. October 24, 2018 for Spouse:  Spouse refilled but this case was dismissed due to Spouse being incarcerated.  Spouse was not allowed to attend a court hearing by telephone as previously arranged.

35.    Therefore, Creditor's adverse characterization of Debtor and Spouse is unwarranted and does not satisfy the condition of 362(d)(4).

**CREDITOR DOES NOT HAVE A FIRST PRIORITY LIEN
AND DOES HAVE A BILLING DISPUTE**

36.    In the Motion for Relief, without proof, DLJ claims that Debtor was to pay them $2,180.73 per month since Debtor's November filing.  Because DLJ would neither speak with

Debtor's counsel about monies owed nor provide an accounting, Debtor avers that no monthly payment was ever agreed upon or signed. Historically, Selene the alleged servicer, has waffled in the monthly billing amount between $2,234.75 and $1,769.81 that included insurance and taxes (See **Exhibit 3**). Prior to Selene acquiring the servicing, Debtor had a permanent modified monthly payment of $1,535.

37.    By Debtor's estimation, he has paid $200,000 to mortgage companies.

38.    In a required 6-month schedule that Debtor created at the time of the bankruptcy petition filing, it shows that he set aside $1,500 per month for alleged mortgage payments.

## CREDITOR INCORRECTLY CHALLENGES NECESSITY OF PROPERTY FOR REORGANIZATION

39.    Creditor states the subject property is not necessary for "effective reorganization". The property is the home and residence of Debtor and Spouse. Debtor also uses the home as his office to effect reorganization of both his business and personal life. The Property is not burdensome to the bankruptcy estate. The dispute between Debtor and DLJ is the primary reason for this reorganization. Debtor has begun to regenerate his business after the theft of his business equipment and assets.

40.    Recently, Debtor and Spouse had suffered a catastrophic loss when house sitters plundered their home of all clothing, furnishings and business equipment while vandalizing the Property. Debtor and Spouse's insurance claim was denied, and they are in the process of having to litigate with the company for the "total loss" recovery in the homeowner's policy.

41.    The theft included the loss of all Debtor's photographic gear (cameras, lenses, lighting equipment, scanners, printers, etc., with an approximate value of $50,000). Debtor has begun to replace some of the gear and is continuing with photographic shoots. The Property is necessary for Debtor to promote and conduct business.

42.     Therefore, Debtor is in the daily process of reorganizing his assets and debts, and hence the Property is essential. The loss of the Property would cause Debtor irreparable harm. Debtor has sources of potential cash to be brought into the estate which will be itemized in the plan.

## THERE IS SUFFICIENT VALUE IN THE PROPERTY
## TO PROTECT CREDITOR'S INTEREST

43.     Debtor and counsel have collectively made requests for accounting regarding the amounts that DLJ claim are owed on the Property, including monthly mortgage payments. All these requests have remained unanswered. Debtor alleges that DLJ has inflated the amounts owed.

44.     Using on-line sources, Debtor asserts that the current value of the Property is now approximately $452,000, a significant increase since Debtor filed his petition. If it is found in adversary proceedings the Creditor has an interest, the estate would cover its interests.

45.     A review of the Public Records of Bernalillo County, New Mexico indicate that there may be one small lien ($2,349.70) against the Property in addition to the Mortgage.

46.     Therefore, contrary to Creditor's arguments in the Motion for Relief, there is not an immediate need by Creditor to proceed with a sale of the Property to protect any interest it has in the Property.

## CONCLUSION

47.     As indicated herein, there is a question as to whether Creditor is entitled to enforce the Note and Mortgage. There is a clear history of a dispute between the parties.

48.     The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank* v. *New Jersey Dept of Evntl. Protection,* 474 U.S. 494, 503 (1986). The purpose of the automatic stay is to allow a debtor to focus its attention on

reorganization efforts without the distraction of having to defend against outside litigation. *CAE Indus. Ltd.* v. *Aerospace Holdings Co.*, 116 B.R. 31, 32 (S.D.N.Y. 1990). It maintains the status quo to protect a debtor's ability to control the sale or other disposition of property of the estate. Collier on Bankruptcy ~ 362.03 (16th ed. rev. 2012). Additionally, the automatic stay prevents the state-law "race to the courthouse and is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas". *SEC* v. *Brennan,* 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.,* 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

**WHEREFORE**, based on the foregoing, Debtor now respectfully asks and moves the Court:

a. Deny the relief sought in the Motion.

b. To find that DLJ does not have standing to bring the Motion.

c. Grant other relief, the Court deems just and proper including attorney fees and costs.

Respectfully submitted,

*electronically signed:*
James Clay Hume, JD
*Attorney for Debtor*
HUME LAW FIRM
PO Box 10627
Alameda, NM 87184
(505) 888-3606
james@hume-law-firm.com

**I HEREBY CERTIFY** my belief that a true and correct copy of the foregoing will be transmitted via CM/ECF to Michael D. Mazur, Esq., attorney for movant and to the United States Trustee contemporaneously upon filing of the pleading.

Exhibit
1

Ruby and Michael Jacobs
IN RE: Real Property
800 Calle Divina NE
Albuquerque, NM 87113

## AFFIDAVIT OF JOSEPH R. ESQUIVEL JR.

I, Joseph R. Esquivel Jr. declare as follows:

1.  I am over the age of 18 years and qualified to make this affidavit.

2.  I am a licensed private investigator of in the State of Texas, License # A20449.

3.  I make this affidavit based on my own personal knowledge.

4.  I make this affidavit in support of *Mortgage Compliance Investigations* Chain Of Title
    Analysis & Mortgage Fraud Investigation prepared for Ruby and Michael Jacobs regarding
    the Security Instrument and the real property located at 800 Calle Divina NE, Albuquerque,
    NM 87113, as referenced in the Bernalillo County Record.

5.  I have no direct or indirect interest in the outcome of the case at bar for which I am offering
    my observations.

6.  I have personal knowledge and experience in the topic areas related to the securitization of
    mortgage loans, real property law, Uniform Commercial Code practices, predatory lending
    practices, assignment and assumption of securitized loans, creation of trusts under deeds of
    trust, pooling and servicing agreements, issuance of asset-backed securities and specifically
    mortgage-backed securities by special purpose vehicles in which an entity is named as trustee
    for holders of certificates of mortgage backed securities, the foreclosure process of securitized
    and non-securitized residential mortgages in both judicial and non-judicial states, and the
    various forms of foreclosure-related fraud.

7. I perform my research through the viewing of actual business records and Corporate/Trust Documents.

8. I use professional resources to view these records and documents.

9. I have the training, knowledge and experience to perform these searches and understand the meaning of these records and documents with very reliable accuracy.

10. I am available for court appearances, in person or via telephone for further clarification or explanation of the information provided herein, or for cross examination if necessary.

11. My research through professional services and using Loan Level Data obtained from an independent third party that specializes in locating loans in Residential Mortgage Backed Securities (RMBS) and Government Sponsored Enterprises (GSE) loans identified an interest of the Ruby Handler Jacobs Mortgage Loan Instrument was sold sometime shortly after November 05, 2005 to the Encore Credit Receivables Trust 2005-2 and subsequently in June 2008 the Encore Credit Receivables Trust 2005-2 was transferred into Maiden Lane Asset Backed Securities I Trust 2008-1 where it still is today along with that an interest in the Ruby Handler Jacobs Mortgage Loan Instrument.

This Loan Level Data was obtained from the CTS Link Online Portal on October 22,2019 by Housing Mortgage Consultants, William McCaffrey

0017132823MH         P       P       7.740     308000            000085600000000000000000
05060436000562340000003600 60 00984 NM            000000            YC71   000087113
F33333333333 11            000000   01012006 12012035 0000 00 00 00000 000000 000000
000000 00056234      00000                   ALBUQUERQUE
30043                            Y      000000 000 00000MLAB08-1-4
06875000N0000000 02     4 00000000.000.000000            B      100087000.00000
00.00000.00000.000            00.000200603316540F30000.0000000000
F20080010000000.0000000000.0000081797.8400000000.0020131231MLABS
0.0000000.0000000.0000000.0000000.0000000.000000
009999000000000.00000000000.00            NATIONSTAR MORTGAGE LLC.
00.0000ENCORE            CREDIT            CORP
00000000.0000000000.0000000000.0000000000.00      00000000.00

*Page 2 of 11  Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 12 of 25

0017132823MH – Loan Number
P
P
7.740 – Initial Interest Rate – Matches Note
308000 – Amount of Loan – Matches note
00008560000000000000000
05060436000562340000360
60
00984
NM - State
000000
YC71
000087113
F33333333333 – Foreclosure over 360 Days
11
000000
01012006 – Date of First Payment – Matches Note
12012035 – Date of Maturity of loan – Matches Note
0000
00
00
00000
000000
000000
000000
00056234
00000
ALBUQUERQUE – Property City – Matches Note
30043
Y
000000
000
00000MLAB08-1-4 – Maiden Lane Asset Backed -08 Series
06875000N0000000
02
4
00000000.000.000000
B
100087000.
00000 00.
00000.00000.000
 00.000200603316540F30000.
0000000000.00 F200800100000000
.0000000000
.0000081797

*Page 3 of 11  Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 13 of 25

.8400000000
.0020131231MLABS
0.0000000
.0000000
.0000000
.0000000
.0000000
.000000
009999000000000
.00000000000.00
NATIONSTARMORTGAGELLC. – Master Servicer
00.0000
ENCORE CREDIT CORP  - Originator
00000000
.0000000000
.0000000000
.0000000000
.00
 00000000.00

12. Per the Prospectus Supplement (To Prospectus dated October 25, 2004) for the Encore
    Credit Receivables Trust 2005-2 Trust, the transaction participants of the Encore Credit
    Receivables Trust 2005-2 are: (1) **Sponsor/Seller**, ECC Capital Corporation (2) The
    **Depositor**: CWABS, Inc., a Delaware corporation (3) Issuing Entity: The Depositor formed
    the Encore Credit Receivables Trust 2005-2, a common-law trust created under the laws of
    the State of New York, pursuant to the Pooling and Servicing Agreement. (4) **Trustee**: The
    Bank of New York, a New York banking corporation, as Indenture Trustee (the "Indenture
    Trustee").  The Trust closed on or about May 27, 2005 (see, PROSPECTUS at the
    SECURITY EXCHANGE COMMISSION'S ("SEC") website
    https://www.sec.gov/Archives/edgar/data/1021913/000088237705001357/d336459.txt
    see also, annexed Exhibit "A," pages 1,2 and 3 of the PROSPECTUS for the convenience of
    the reader).

13. I have looked at a purported to be true and correct copy of a Tangible Promissory Note of
    Ruby Handler Jacobs dated November 09, 2009, regarding a loan for $308,000.00. The
    Original Lender of the November 09, 2009 Jacobs loan is Encore Credit Corp. A California
    Corporation. (See Exhibit "B" attached within)

*Page 4 of 11  Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 14 of 25

a.  This copy of the Ruby Handler Jacobs Note shows an indorsement, in the form of an allonge to the Note, from Encore Credit Corporation, a California Corporation, signed by Jimmy Lopez as Authorized Signatory, made payable to IMPAC Funding Corporation. This copy of the allonge does NOT have the same holes at the top of the page as pages 1,2 and 3 have.

b.  This copy of the Ruby Handler Jacobs Note shows a second indorsement, in the form of a second allonge to Note itself, IMPAC Funding Corporation, signed by Jimmy Lopez as Authorized Signatory, made payable to EMC Mortgage Corporation being named as payee, even though there is plenty of room on the first allonge for this indorsement to take place

c.  This copy of the Ruby Handler Jacobs Note has Jimmy Lopez signing for both Encore Credit Corporation and IMPAC Funding in the same capacity as authorized signatory.

14. The Encore Credit Receivables Trust 2005-2 is not named in any way on the Ruby Handler Jacobs Note.

a.  Nationstar Mortgage, LLC is not named or referenced in any way on the Ruby Handler Jacobs Note though named in an Assignment of Mortgage filed into public record.

b.  ECC Capital Corporation as seller for the Encore Credit Receivables Trust 2005-2 Trust is not named or referenced in any way on the Ruby Handler Jacobs Note.

c.  CWABS, Inc., as Depositor for the Encore Credit Receivables Trust 2005-2 Trust is not named or referenced in any way on the Ruby Handler Jacobs Note.

*Page 5 of 11 Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 15 of 25

d. The Bank of New York as Indenture Trustee for the Encore Credit Receivables Trust 2005-2 Trust is not named or referenced in any way on the Ruby Handler Jacobs Note.

e. U.S. Bank National Association Not in its Individual Capacity but solely as Trustee for the Holders of Maiden Lane Asset Backed Securities I Trust 2008-1 is not named or referenced in any way on the Ruby Handler Jacobs Note.

15. I have looked at a Mortgage of Ruby Handler Jacobs dated November 09, 2005 and filed in the Official Records of the Bernalillo County Clerks' Office on November 21, 2005 as ins# 2005172270 Bk A107 Pg-1807. (See Exhibit "C" attached within)

a. The Encore Credit Receivables Trust 2005-2 is not named in any way to the Ruby Handler Jacobs Mortgage

b. ECC Capital Corporation as seller for the Encore Credit Receivables Trust 2005-2 Trust is not named or referenced in any way on the Ruby Handler Jacobs Mortgage

c. CWABS, Inc., as Depositor for the Encore Credit Receivables Trust 2005-2 Trust is not named or referenced in any way on the Ruby Handler Jacobs Mortgage

d. The Bank of New York as Indenture Trustee for the Encore Credit Receivables Trust 2005-2 Trust is not named or referenced in any way on the Ruby Handler Jacobs Mortgage

e. U.S. Bank National Association Not in its Individual Capacity but solely as Trustee for the Holders of Maiden Lane Asset Backed Securities I Trust 2008-1 is not named or referenced in any way on the Ruby Handler Jacobs Mortgage

16. I have looked at the Bernalillo County Record relating to the Ruby Handler Jacobs Mortgage dated November 05, 2005. The Bernalillo County Record shows an "Corporate Assignment of Mortgage", dated February 25, 2011 and filed in the Official Records of the Bernalillo County Clerks' Office on February 28, 2011 as ins# 2011019791, signed by Josie Streitz as

*Page 6 of 11  Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 16 of 25

Assistant Secretary and notarized February 25, 2011 by Renee Cook, Arizona Notary Commission #N/A, where Mortgage Electronic Registration Systems, Inc., grants, assigns, and transfers to Nationstar Mortgage, LLC. (See Exhibit "D" attached within)

17.    There is no sale of the Ruby Handler Jacobs Mortgage Loan caused through the Ruby Handler Jacobs Assignment of Mortgage.

18.    There is no record of authority filed into the Bernalillo county record which is required, pursuant to NMSA 1978 § Chapter 47-1-7 relating to the filing of this document into public record.

19. I have looked at the Bernalillo County Record relating to the Ruby Handler Jacobs Mortgage dated November 05, 2005. The Bernalillo County Record shows an "Corporate Assignment of Mortgage", dated April 28, 2011 and filed in the Official Records of the Bernalillo County Clerks' Office on May 03, 2011 as ins# 2011041902, signed by Josie Streitz as Assistant Secretary and notarized April 28, 2011 by Renee Cook, Arizona Notary Commission #N/A, where Mortgage Electronic Registration Systems, Inc., grants, assigns, and transfers to U.S. Bank National Association Not in its Individual Capacity but solely as Trustee for the Holders of Maiden Lane Asset Backed Securities I Trust 2008-1. (See Exhibit "E" attached within).

20. There is no sale of the Ruby Handler Jacobs Mortgage Loan caused through the Ruby Handler Jacobs Assignment of Mortgage.

21. There is no record of authority filed into the Bernalillo county records which is required, pursuant to NMSA 1978 § Chapter 47-1-7 relating to the filing of this document into public record.

22. I have looked at a copy of the MERS Procedures Manual, Release 19.0, dated June 14, 2010, and MERS Residential Marketing Kit, Terms And Conditions: (see Exhibit "F" attached within)

    a.   It is stated in the MERS Procedures Manual, Release 19.0, dated June 14, 2010:

*Page 7 of 11 Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 17 of 25

Page 63 – Transfer of Beneficial Rights to Member Investors, Overview:

**"Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee."** (emphasis added)

It is stated in the MERS Residential Marketing Kit, Terms And Conditions:

2. …MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. **MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights** (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law. (emphasis added)

6. **MERS and the Member agree that: (i) the MERS System is not a vehicle for creating or transferring beneficial interests in mortgage loans**… (emphasis added)


23. I have looked at the Bernalillo County Record relating to the Ruby Handler Jacobs Mortgage dated November 05, 2005. The Bernalillo County Record shows an "Assignment of Mortgage", dated April 19, 2013 and filed in the Official Records of the Bernalillo County Clerks' Office on April 19, 2012 as ins# 2013053092, signed by Gina Gray as Vice President and notarized May 14, 2013 by Gina Gray, Texas Notary Commission #N.A., where U.S. Bank National Association, Not Individually, but Solely as Trustee for the Holders of Maiden Lane Asset Backed Securities I Trust 2008-1 grants, assigns, and transfers to DLJ Mortgage Capital, Inc. (See Exhibit "G" attached within).


24. There is no sale of the Ruby Handler Jacobs Mortgage Loan caused through the Ruby Handler Jacobs Assignment of Mortgage.

*Page 8 of 11 Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 18 of 25

25. There is no record of authority filed into the Bernalillo county records which is required, pursuant to NMSA 1978 § Chapter 47-1-7 relating to the filing of this document into public record.

26. A reading of NMSA 1978 § 47-1-7 shows, in simple English, as a restriction of NMSA 1978 § Chapter 47, any agent of the owner acting with any writing having a legal or equitable effect on real property must show a acknowledged, certified, filed and recorded, authority to so act. This has not happened with any of the 3 Assignments of Mortgage that were filed into public record for the Mortgage of Ruby Handler Jacobs dated November 09, 2005 and filed in the Official Records of the Bernalillo County Clerks' Office on November 21, 2005

    NMSA 1978 § 47-1-7 Powers of attorney and revocations thereof to be acknowledged and recorded

    a. All powers of attorney or other writings containing authority to convey real estate, as agent or attorney of the owner of the same, or to execute, as agent for another, any conveyance of real estate, or by which real estate may be affected in law, or equity, shall be acknowledged, certified, filed and recorded, as other writings conveying or affecting real estate are required to be acknowledged.

27. The transfer and sale of all Beneficial Interest of the Ruby Handler Jacobs Mortgage to Encore Credit Receivables Trust 2005-2 should have been done on or before the Closing Date of the Encore Credit Receivables Trust 2005-2 which was May 27, 2005. The requirements for defining a REMIC from IRS can be found at 26 USCA §860 A thru G and by going to https://www.gpo.gov/fdsys/pkg/USCODE-2009-title26/html/USCODE-2009-title26-subtitleA-chap1-subchapM-partIV-sec860D.htm which mean that the Encore Credit Receivables Trust 2005-2 is unable to have any other assets put into the Encore Credit Receivables Trust 2005-2 after the Closing Date of May 27, 2005. The Assigning of a defective obligation to the REMIC also goes against what is required (Verbatim provided in pertinent part below)

    USCA stands for United States Code Annotated.

    Title 26 is the Internal Revenue Code

    Subchapter M includes Regulated Investment Companies and Real Estate

*Page 9 of 11 Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

Case 19-12591-j11   Doc 33   Filed 04/27/20   Entered 04/27/20 09:29:30 Page 19 of 25

Investment Trusts.

*26 U.S.C. 860D*

*United States Code, 2009 Edition*

*Title 26 - INTERNAL REVENUE CODE*

*Subtitle A - Income Taxes*

*PART IV - REAL ESTATE MORTGAGE INVESTMENT CONDUITS*

*Sec. 860D - REMIC defined*

*From the U.S. Government Printing Office, www.gpo.gov*

*§860D. REMIC defined*

*(a) General rule*

*For purposes of this title, the terms "real estate mortgage investment conduit" and*
*"REMIC" mean any entity—*

*(4) as of the close of the 3rd month beginning after the startup day and at all times*
*thereafter, substantially all of the assets of which consist of qualified mortgages and*
*permitted investments,*

28. The transfer and sale of all Beneficial Interest of the Ruby Handler Jacobs Mortgage to U.S.
    Bank National Association, Not Individually, but Solely as Trustee for the Holders of
    Maiden Lane Asset Backed Securities I Trust 2008-1 should have been done on or before
    June 26, 2008. (See page 9 of 29 of the Maiden Lane LLC Financial Statements for years
    ended December 31,2010 and 2009, Exhibit (H) attached within)

*Page 10 of 11 Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs -- 800 Calle Divina NE,*
*Albuquerque, NM 87113*

Case 19-12591-j11    Doc 33    Filed 04/27/20    Entered 04/27/20 09:29:30 Page 20 of 25

The above statements are affirmed by me under penalty of perjury under the laws of the State of Texas to be true and correct to the best of my knowledge and belief, are based on my own personal knowledge, and I am competent to make these statements.

FURTHER THE AFFIANT SAYETH NAUGHT

By _Joseph R Esquivel Jr_ Executed on _10 / 27 / 2019_

   Joseph R Esquivel, Jr.

   Private Investigator License # A20449

   Mortgage Compliance Investigations LLC

STATE OF TEXAS     )
                         )
COUNTY OF TRAVIS   )

Subscribed and sworn before me, _Lori M. Esquivel_,

Notary Public, on this _27th_ day of _October_, 2019 by _Joseph R. Esquivel Jr_, Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me. WITNESS my hand and official seal.

_Lori M Esquivel_

Notary Public

LORI M. ESQUIVEL
My Notary ID # 130167889
Expires March 25, 2023

*Page 11 of 11  Factual Affidavit of Joseph R. Esquivel Jr for- Ruby and Michael Jacobs – 800 Calle Divina NE, Albuquerque, NM 87113*

**Exhibit 2**

Mr. Michael Jacobs
800 Calle Divina NE
Albuquerque, New Mexico [87113]
Tel: (505) 321-3044
Email: michael.mjphoto@gmail.com

"Without Prejudice"
Effective date of April 17, 2020
Sent by: Certified Mail and Return Receipt
    #7018 1130 0001 3474 4219

Mr. Michael D. Mazur
Attorney for Creditor DLJ Mortgage
Rose L. Brand & Associates. PC
7430 Washington Street, NE
Albuquerque, NM 87109

**RE: Notice of Intent to File Lawsuit**

Dear Mr. Mazur:

    This Letter of Intent to sue shall serve as a formal notice that Debtor Michael Jacobs (the "Plaintiff") intends to commence a lawsuit against your client, their agents and others listed hereinbelow due to the following:

    Alleged creditors include, but are not limited to, DLJ Mortgage Capital, Inc ("DLJ"); Selene Finance LP ("Selene"); Ditech Financial LLC ("Ditech");U.S. Bank National Association ("USB"), as Trustee for the Holders of Maiden Lane Asset Backed Securities I Trust 2008-1 Maiden Lane 2008-1 Trust; and Bank of New York Mellon ("BONY"), as Trustee for Encore Credit Receivables Trust 2005-2 Trust; and Does 1-10 (the "Defendants").

    Plaintiff alleges that Defendants DLJ and Selene have made the representation that they are the equal and joint holder(s) of a specific lost Promissory Note and Mortgage. These two Defendants joined for the explicit purpose of inducing Plaintiff to refrain from acting to defend any foreclosure action in reliance upon their representations. The representations were made for the purpose of defrauding the Plaintiff out of the subject property: 800 Calle Divina NE, Albuquerque, NM 87113. In the current Plaintiff's bankruptcy, Defendant DLJ is attempting to lift the automatic stay and complete a foreclosure sale as only a fifty percent holder.

    A fundamental principle in New Mexico mortgage law is that a foreclosing party must have the power to enforce the underlying note. Plaintiff continues to dispute the title and ownership of the real property in question, which will be the subject of his action, in that the originating mortgage lender, and others alleged to claim ownership of Debtor's (Plaintiff's) Promissory Note and/or Mortgage, have unlawfully sold, assigned and/or transferred their ownership and security interest. The Plaintiff moves forward with this action based on the grounds that new, important, and material evidence has been discovered which demonstrates how Defendants do not have lawful ownership or a security interest in, nor standing to foreclose on Plaintiff's home. Furthermore, it is well settled through years of litigation that Plaintiff and non-filing spouse have also taken an adversarial stance against Defendants DLJ and

Selene because they have never been forthcoming nor have ever been willing to negotiate despite multiple attempts.

As a direct and proximate result of Defendants' violations, Plaintiff incurred and continues to incur damages in an amount not yet ascertained, including, without limitation, punitive damages, and statutory damages. All of these willful unlawful activities by the Defendants caused and continue to cause Intentional Infliction of Emotional Distress to Plaintiff and his non-filing spouse.

I. **The Plaintiff**: Michael Jacobs (the "Plaintiff").

II. **The Defendants**: DLJ Mortgage Capital, Selene Finance LP, Ditech Finance LLC, U.S. Bank National Association, Bank of New York Mellon and Does 1-10 (the "Defendants").

III. **Relief**: As a result of your actions, the Plaintiff seeks relief in the form of:

a) The immediate ceasing of any foreclosure actions against Plaintiff and non-filing spouse;
b) The immediate abandonment and withdrawal of your Motion for Relief from Automatic Stay filed with the U.S. Bankruptcy Court, District of New Mexico, on April 2, 2020;
c) Providing a factual accounting of all monies paid by Plaintiff;
d) Providing a factual accounting of all debits and credits on the Plaintiff's account;
e) Providing the original Promissory Note;
f) Reasonable damages due to the substantial emotional pain and suffering that continues as of this writing.

IV. **Settlement Demand**: After careful consideration of the issues involved in this claim, you may cure and/or settle this matter outside of court and avoid a lawsuit by implementing the requested relief within 30 days of receiving this Letter of Intent.

V. **Governing Law**: This Letter of Intent shall be governed under the laws of the State of New Mexico, United States, and all other jurisdictions that may apply.

Sincerely,

Michael Jacobs

cc:
James Hume, Attorney at Law

DLJ Letter of Intent to Sue

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Michael D. Mazur

Rose L. Brand &
            Associates P.C.

7430 Washington St. NE

Albuquerque, NM 87109

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

2. Article Number (Transfer from service label)

7018 1130 0001 3474 4215

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Adult Signature
   ☐ Adult Signature Restricted Delivery
   ☐ Certified Mail®
   ☐ Certified Mail Restricted Delivery
   ☐ Collect on Delivery
   ☐ Collect on Delivery Restricted Delivery
   ☐ Insured Mail
   ☐ Insured Mail Restricted Delivery

   ☐ Priority Mail Express®
   ☐ Registered Mail™
   ☐ Registered Mail Restricted Delivery
   ☐ Return Receipt for Merchandise
   ☐ Signature Confirmation™
   ☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# SELENE®
### FINANCE

9990 Richmond, Suite 400 South
Houston, TX 77042-4546



0-755-49539-0005307-002-1-000-010-000-000

RUBY HANDLER JACOBS
800 CALLE DIVINA NE
ALBUQUERQUE NM 87113-1281

# Mortgage Statement
Statement Date: 01/16/2015

If you have questions or concerns about your statement or account, please contact us at (877)735-3637 between the hours of 8:00am to 5:00pm CT Monday through Friday or you can contact us at www.selenefinance.com.

Hearing Impaired call 711 or (800)735-2989.

| | |
|---|---|
| **Account Number** | **0000804740** |
| **Payment Due Date** | **02/01/2015** |
| **Amount Due** | **$85,992.47** |

*If payment is received after 02/16/2015, a maximum of $82.75 late fee may be charged.*

**Property Address:**

800 NE CALLE DIVINA
ALBUQUERQUE NM 87113

## Exhibit 3

## Account Information

| | |
|---|---|
| Outstanding Principal Balance* | $324,305.93 |
| Deferred Principal Balance | $0.00 |
| Escrow Balance | -$20,973.04 |
| Interest Rate | 3.500% |
| Prepayment Penalty | No |

*This is the principal balance only, not the amount required to pay your account in full.

## **Delinquency Notice**

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home. Your loan has been past due since 2011-11-02. As of 01/16/2015, you are 120 days delinquent on your mortgage loan.

- Payment Due 8/1/2014 Unpaid balance of $1,769.81
- Payment Due 9/1/2014 Unpaid balance of $1,769.81
- Payment Due 10/1/2014 Unpaid balance of $1,769.81
- Payment Due 11/1/2014 Unpaid balance of $1,769.81
- Payment Due 12/1/2014 Unpaid balance of $1,769.81
- Payment Due 1/1/2015 Unpaid balance of $1,769.81
- Current Payment due 02/01/2015: $1,769.81
- Total $85,992.47 due. You must pay this amount to bring your loan CURRENT.

**If you are Experiencing Financial Difficulty:** See back for information about mortgage counseling assistance.

## Explanation of Amount Due

| | |
|---|---|
| Principal | $796.77 |
| Interest | $858.27 |
| Escrow (For Taxes and/or Insurance) | $114.77 |
| **Regular Monthly Payment** | **$1,769.81** |
| Total Late Fees and Other Charges | $248.25 |
| Corporate Advances | $10,857.26 |
| Past Due Amount | $73,117.15 |
| Unapplied Balance | $0.00 |
| **Total Amount Due** | **$85,992.47** |

## Past Payments Breakdown

| | Paid Last Cycle | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Corporate Advance | $0.00 | $0.00 |
| Partial Payment (Unapplied)* | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Transaction Activity (12/16/2014 - 01/15/2015)

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | ESCROW | OPTIONAL | LATE CHARGES | FEES/OTHER | SUSPENSE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | There were not any transactions for the statement period. | | | | | |

## Important Messages

*Partial Payments: Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

Your 2014 Annual Tax and Interest information will be available at www.selenefinance.com after 1/9/2015. The paper statement will be mailed to you by 1/31/2015.

005-0814-1100F