UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE:

Michael Jacques Jacobs
*fdba* Michael Jacobs Photojournalism

Debtor.
_____/

Case No.: 11-19-12591-j
Chapter 11

FILED
at 11:48 o'clock A M

DEC 1 0 2020

United States Bankruptcy Court
Albuquerque, New Mexico

## DEBTOR'S RESPONSE TO DEBTOR'S COUNSEL'S MOTION FOR WITHDRAWAL OF COUNSEL

**COMES NOW**, Michael Jacques Jacobs ("Debtor"), and hereby files this Objection ("Objection") to Debtor's counsel's Motion for Withdrawal of Counsel ("Motion") and respectfully states:

## BACKGROUND

1.   Debtor's counsel of record, James Clay Hume JD of the Hume Law Firm ("Debtor's counsel"), was originally retained by Debtor on or about August 15, 2019, and paid a retainer to handle the Chapter 13 case already ongoing in the Bankruptcy Court.

2.   Upon discussions with Debtor's counsel, it was determined that Debtor's situation was better suited for a Chapter 11 in Bankruptcy Court ("Bankruptcy Case"), and thus on November 12, 2019 Debtor filed the Chapter 11 petition.

3.   In or about January 2020 at the first Trustee meeting, Debtor's counsel was fully knowledgeable as to the adversary actions that Debtor intended to file in the Chapter 11. Debtor's counsel clearly informed the Trustee that he and Debtor would be working on the Bankruptcy Case and adversaries together.

4. On or about July 28, 2020, Debtor's counsel suggested that Debtor seek other representation due to his health issues and provided two attorney recommendations. Debtor's counsel informed Debtor that he had 183 other clients.

5. On or about July 31, 2020, Debtor informed Debtor's counsel that after discussions with more than a dozen attorneys, including counsel's recommendations, he was unable to obtain a commitment and would therefore have to remain with Debtor's counsel.

6. Debtor's counsel filed his Adversary action on September 15, 2020.

7. Following Debtor's counsel's recommendation Debtor provided him with funds that equaled mortgage payments into his IOLTA account.

8. Shortly thereafter Debtor inquired about local rules and permission from the court for payment of attorney fees so that Debtor's counsel could begin receiving payments.

9. On November 5, 2020, Debtor requested clarification from Debtor's counsel about some invoicing he had received..

10. On or about November 18, 2020, Debtor received communication from Debtor's counsel stating that he was seeking withdrawal in the midst of numerous judicial actions. He provided sample orders to that effect. Debtor responded that he wanted to work out any issues including the invoicing.

11. On November 25, 2020, Debtor's counsel filed a Motion for Withdrawal as Counsel. (Docket #20). Debtor's counsel also filed a Motion for Withdrawal as Counsel simultaneously in the underlying Bankruptcy Case.

12. On November 30, 2020, Debtor and Non-Filing Spouse Ruby Jacobs ("NFS") had a telephone call ("phone call") with Debtor's counsel regarding claims in his Motion (see Exhibit 1 and Exhibit 2)

## OBJECTION TO MOTION TO WITHDRAW AS COUNSEL

13. Debtor denies the assertions in Paragraph 3 that Debtor's counsel's withdrawal does not jeopardize Debtor's interests.

14. Debtor denies the assertions in Paragraph 4 and asserts that Debtor's counsel does not reasonably believe that Debtor's course of action is either criminal or fraudulent.

15. Debtor denies the assertions in Paragraph 5 and asserts that Debtor's counsel does not reasonably believe that Debtor is using Debtor's counsel to perpetuate any action that is either criminal or fraudulent.

16. Debtor denies the assertions in Paragraph 6 in that Debtor's counsel's has never discussed nor had a fundamental disagreement with Debtor.

17. Debtor denies the assertions in Paragraph 7 in that Debtor never failed to fulfill an obligation and was never given any warning concerning obligations.

18. Debtor denies the assertions in Paragraph 8 that Debtor's counsel would suffer unreasonable financial burden. Debtor's counsel has not sought to obtain permission from the Court to receive payments from Debtor's estate nor has he entered an amount on the re-organization plan to be filed.

19. Debtor denies the assertions in Paragraph 9 in that Debtor's counsel neglects to list any "other good cause."

## ARGUMENT

20. Debtor asserts that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." In the Tenth Circuit, *Chavez v. Primus Auto. Fin. Servs.*, 1997 WL 634090, at *4.

21. Debtor's counsel enumerated the full list of seven assertions in his Motion that his withdrawal is permitted pursuant to N.M.R. Prof'l. Cond. 16-116(B), which has the effect of compromising Debtor's case. Debtor's counsel has placed an unnecessary burden upon his client.

22. Debtor is not fully certain as the underlying factors service as a basis for the filing of Debtor's counsel's Motion but suspects that timing indicates an issue concerning fees.

23. Debtor further believes that Debtor's counsel may be concerned to do all the work that is required by the issues and actions taken by Defendants in this case because he has uneasiness that he might not be paid for all the work and cannot be paid without order by the Court.

24. By no means is Debtor asking Debtor's counsel or taking action himself that is criminal or fraudulent, and it is entirely inappropriate for counsel to have stated that in the Motion. Debtor's counsel statements in the Motion are patently untrue.

25. Moreover, Debtor's counsel admitted to Debtor and NFS during the phone call that he just filed the "laundry list" and that he did not believe that Debtor was pursuing any criminal or fraudulent activities. (See Exhibit 1)

26. The actions Debtor is requesting be taken are totally legal and appropriate based on DLJ Mortgage Capital, Inc.'s ("DLJ") inappropriate and fraudulent behavior in attempting to collect a debt that they are not entitled to collect. These conditions are the same now as they have been from day one in the Bankruptcy Case, and the same as the Debtor's Objection ("Objection") (Docket #98) to DLJ's Motion for Claim/Issue Preclusion ("Preclusion") (Docket #94) filed by Debtor's Counsel in the Bankruptcy Case as recently as November 15, 2020.

27. DLJ is the one who has violated the law, not Debtor.

28. Debtor asserts that there were lapses of communication with his counsel due to COVID-19 concerns. However, a difference of opinion occurred when Debtor's counsel's filed the Objection that contained errors and omissions, and Debtor's required legal points were not addressed in said Objection. Debtor asserts there was an obvious correlation between the filing of the Objection and Debtor's counsel's intent to file the Motion.

29. Moreover, during this period of pending withdrawal, somehow what Debtor provided to Debtor's counsel to amend the Objection was overlooked and not filed. Thus, Debtor's amended objection herein attached as Exhibit 3 which had been provided to Debtor's counsel. If this amended objection is not taken into consideration by the Court, Debtor will be unfairly harmed.

## CONCLUSION

30. The accusations by Debtor's counsel are prejudicial to Debtor and potentially defamatory. They have already and will continue to substantially prejudice Debtor in attempting to retain new counsel to pursue both the bankruptcy and adversary actions. Debtor has now made more than two dozen telephone calls to potential replacements for Debtor's counsel without any being agreeable to take on a Chapter 11 case and adversaries in the middle of proceedings.

31. The parties have a year history of working together successfully and amicably on both the Bankruptcy Case and the adversary. It has already become apparent that finding new counsel will be impossible.

32. Debtor asserts that Debtor's counsel's behavior and the statements in the Motion are in violation of the New Mexico Code of Professional Conduct and detrimental to Debtor.

33. However, Debtor opposes the withdrawal of Debtor's counsel because it will be harmful to Debtor in that he would not have any counsel to handle the cases appropriately.

Debtor's counsel made a commitment with the Trustee that he and Debtor would handle the Bankruptcy Case and adversaries together.

34. It is incumbent on Debtor's counsel to file Debtor's re-organization plan and appropriately handle the Motion for Relief proceedings.

**WHEREFORE**, based on the foregoing, Debtor now asks and moves this Honorable Court to deny this Motion for Withdrawal of Counsel, order that Debtor's counsel operate in a professional manner within the Code of Professional Conduct, fulfill his commitment to Debtor and Trustee, and for any further relief the Court deems just and proper.

Respectfully submitted this 9th day of December 2020

_____
Michael Jacques Jacobs
Debtor
800 Calle Divina NE
Albuquerque, NM 87113
Tel: (505) 321-3044
michael.mjphoto@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing pleading will be delivered to Movant and the Office of the United States Trustee contemporaneous with filing of this document.

Further, I hereby certify that a true and correct copy of this pleading was mailed on December 9, 2020 to:

James Clay Hume, Esq.
Attorney for Debtor
PO Box 10627
Alameda, NM 87184-0627
james@hume-law-firm.com

_____
Michael Jacques Jacobs

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608



# AFFIDAVIT OF RUBY JACOBS

Before me, the undersigned authority, personally appeared Ruby Handler Jacobs who is duly sworn, deposes and says:

I, Ruby Jacobs, swear that the information in my sworn statement is truthful to the best of my knowledge and understanding. I am over the age of 18 and sui juris.

I am the "Non-filing Spouse" of Michael Jacobs in a Chapter 11 Bankruptcy case, # 19-12591-j11 and Adversary Case, # 20-0153-j. My husband has been being represented by counsel Mr. James C. Hume, JD, of the Hume Law Firm since August 2019.

On November 27, 2020, I became aware of the Motion to Withdraw of Counsel ("Motion"), filed by Mr. Hume. Both my husband and I were very surprised to receive this document in the mail. To my knowledge, both my husband and his counsel have been on good terms and had a good working relationship during the last 16 months. We used to often all meet in person in Mr. Hume's legal office, he has been a guest in our home, and I have been on some of the phone calls.

Since March of 2020, and the many COVID-19 restrictions, we have not been able to meet in person and I believe that this has sadly affected the relationship. Mr. Hume has been adamant about not meeting with anyone in person since March. My husband recently had a Covid-19 test, which came back as negative. He then sent that verification to Mr. Hume and requested that they meet in person, but Mr. Hume refused.

On November 30, 2020, my husband placed a phone call to Mr. Hume, and Mr. Hume was also aware that I was on this call as we all said our greetings. The call lasted for 52 minutes and we thought it to be amicable. The intent of the call was to inquire about some of the reasons that Mr. Hume listed in his Motion - that were "reasons" for legal counsel to withdraw from a

case - as well as attempting to work out any disagreements. My husband was particularly puzzled, as was I, about Mr. Hume's assertions which stated that in: Paragraph 4 the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent; and Paragraph 5 the client has used the lawyer's services to perpetuate a crime or fraud.

During November 30, 2020 phone call, and upon my husband inquiring of Mr. Hume as to what he could possibly be referring to regarding these statements, Mr. Hume replied,: "Oh, that is just the 'laundry list' of what is permited in a Motion to Withdraw." He further quickly volunteered to us that, "Do I think you are doing anything criminal or fraudulent?, No."

Mr. Hume also suggested on the phone, as well as in follow up emails, that a few amendments to the Schedules be filed as well as amending some of the monthly reports. Thus, over the next few days, my husband did send Mr. Hume amended pages in the Schedules as well as amendments to six (6) of the eleven (11) monthly reports filed thus far.

We did provide all of these requested documents to Mr. Hume, including Mr. Hume's final adjustment requests to the Plan that we just received on December 7th, in our attempts to settle any misunderstandings. We also anticipate Mr. Hume filing my husband's reorganization plan momentarily.

Therefore, we provided to Mr. Hume all that he requested for what we understand would satisfy him to withdraw his Motion.

I also was present at the initial Trustee meeting with my husband and Mr. Hume, and Mr. Hume did aver to the Trustee that he and my husband were going to be completing the Chapter 11 Bankruptcy and the Adversaries together.

*AFFIANT FURTHER SAYETH NAUGHT*

## VERIFICATION

STATE OF NEW MEXICO       }
                          } ss.
COUNTY OF BERNALILLO      }

Affiant Ruby Jacobs, being first duly sworn, upon her oath, state that she has read this Affidavit of Fact, that she knows and understands the contents thereof, and that the same is true and correct to the best of her knowledge, information, and belief.

Dated: 12-09-2020

Ruby Jacobs

*[Notary Seal: OFFICIAL SEAL, Alrenzo Benally-Black, Notary Public, STATE OF NEW MEXICO, My Commission Expires: 2/26/23]*

Notary Public

My Commission expires: 2/26/23







EXHIBIT 3

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re: MICHAEL JACQUES JACOBS,            bankr. no. 19-12591
f/d/b/a Michael Jacques Jacobs Photojournalism

Debtor.

### MOTION TO AMENDED DEBTOR'S OBJECTION
### TO DLJ'S MOTION FOR ISSUE/CLAIM PRECLUSION

COMES NOW Debtor Michael Jacques Jacobs (hereinafter "Debtor"), by counsel James Clay Hume JD (HUME LAW FIRM), seeking this Court's approval to amend his Objection ("Objection") (doc. #98) to the relief requested in the Motion for Issue/Claim Preclusion ("Motion") (doc. #94) filed by DLJ Mortgage Capital, Inc. (hereinafter "Movant" or "DLJ"), Debtor states:

1. Debtor seeks approval of this court to allow this amended Objection due to corrections and defenses that were inadvertently omitted when originally filed.

### DEBTOR MAKES THE FOLLOWING CORRECTIONS TO THE OBJECTION

2. Paragraph 1: Debtor does not affirm assertion in Paragraph 3 of the Motion.

3. Paragraph 2: Refers to the original Motion from Relief from the Automatic Stay.

4. Paragraph 4: Correct to "1st JD NM.

5. Paragraph 5: Correct to add "Case No. A-1-CA-37446."

### DEBTOR MAKES THE FOLLOWING ADDITIONS TO THE OBJECTION

6. The Motion should be denied for the following four reasons: (1) Debtor's prayers in his Answer to DLJ's Motion for Relief ("Answer") (doc. #33) do not seek review of the State case; (2) Movant's motion raised their affirmative defenses in an untimely manner; (3) There is no finality to the State case as it continues litigation in the Court of Appeals which thereby defeats Movant's affirmative defenses; and (4) Extrinsic Fraud and Fraud Upon the Court.

1

## ARGUMENT

### I. Debtor not Seeking Review:

7. Debtor's prayers in his Answer were limited to two items: (1) Denial of relief sought in the motion; and (2) to find that DLJ does not have standing to bring the motion in that DLJ had not filed a Proof of Claim and did not join two indispensable parties who had financial interests in the litigation.

8. Debtor included, in his Argument, issues from the State Foreclosure action purely as reference.

### II. Untimely Filing of Motion:

9. DLJ has filed an "affirmative defense" against a claim by Debtor. As an affirmative defense, *res judicata* must be timely raised. *Joel Bianco Kawasaki v. Meramec Valley Bank*, 81 S.W.3d 528, 535 (Mo. 2002).

10. The Supreme Court has clarified that under federal common law, *res judicata* is a term that encompasses both claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880 (2008)

11. Following the filing of DLJ's Motion for Relief on April 2, 2020, Debtor filed his Answer on April 27, 2020. Debtor requested Admissions, Interrogatories and Production ("discovery"), which were due by August 30, 2020, but did not reach Debtor until two months later on October 29, 2020. Without reference to preclusion by DLJ, several motion filings occurred in the interim up until October 21, 2020 when DLJ filed this Motion, a month after Debtor filed his Adversary proceedings against DLJ and six other defendants, five of whom were not parties to the State Case.

12. In *Reed v. Columbia St. Mary's Hosp.*, the court held that "An affirmative defense

2

is waived when it has been knowingly and intelligently relinquished and forfeited when the defendant [DLJ] has failed to preserve the defense by pleading it. *Reed*, 915 F.3d at 478, citing *Wood v. Milyard*, 566 U.S. 463, 470 & n.4 (2012). " *Burton v. Ghosh*, No. 19-1360, 8 (7th Cir. Jun. 8, 2020); *Kontrick v. Ryan,* 540 U.S. 443, 458, n. 13, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004); *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

13. In this instant action, Debtor contends DLJ has been fully aware of these defenses at least from the moment that Debtor filed his Answer yet did not raise the *res judicata* and *Rooker-Feldman* claims until after Debtor filed his Adversary proceedings and before Debtor received discovery. The court in *Joel Bianco Kawasaki* clearly stated "*[r]es judicata* is not a stealth defense that can be held in reserve."

14. Debtor suffers from prejudice[1] in that the theories were not raised prior to discovery. Had Debtor been aware of DLJ's defenses, then he would have been able to address them within the scope of his discovery requests. Again in *Reed*, the court states "[b]ut if the defense is untimely and the delay prejudices (i.e., significantly harms) the plaintiff [Debtor], it is forfeited and normally may not be considered by the court. *Reed*, 915 F.3d at 478-79.

**15.** Therefore, Debtor requests that this Court deny DLJ the use of this affirmative defense in their Motion.

### III. **Finality and Litigation:**

16. Debtor asserts that the judgement of the state court is not a final judgement as the case is before the appellate court.

17. Moreover, finality has not been achieved in a State Foreclosure action, in that part

---

[1] The *Burton* court stated "By 'prejudice,' we do not mean whether the defense will succeed on the merits and cause the plaintiff to lose. We mean unfair prejudice, meaning that the late assertion of the defense causes some unfairness independent of the potential merits of the defense." *Burton.* No. 19-1360, 10 (7th Cir. Jun. 8, 2020).

of the decree that directs the manner and terms of the sale of the mortgaged property does not become a final judgment until the judicial confirmation of the sale, whereupon it becomes final. *Plaza Nat'l Bank v. Valdez*, 1987-NMSC-105, 106 N.M. 464, 745 P.2d 372.

18. In defining finality of a judgement the Supreme Court wrote: "Where a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if that question will not alter the judgment or moot or revise the decision embodied therein." *Kelly Inn No. 102,* 113 N.M. at 238, 824 P.2nd at 1040.

19. Debtor's Appeal seeks to alter the judgment and/or revise the decision.

20. "Given the pending appeal in state court, a final judgment has not been reached for the purposes of *res judicata* and collateral estoppel." *Hawaii Children's Blood and Cancer Group v. Hawai'i Pacific Health et al*, Case 1:03-cv-00708-SOM-LK.

21. In *Moffat v. Branch,* 2005-NMCA- 103, the court opines "[b]ut once a judgment is rendered after such an opportunity, justice requires that there be an end to the litigation." *Ford v. N.M. Dep't of Pub. Safety*, 119 N.M. 405, 409, 891 P.2d 546, 550 (Ct. App. 1994).

22. As stated by the court that litigation[2] includes appeal action, "Defendants were in the midst of litigation before the New Mexico Court of Appeals " *Jicarilla Apache v. Rio Arriba County*, 440 F.3d 1202, 1212 (10th Cir. 2006)

23. Therefore, with regard to the State Foreclosure action, finality has not been attained since litigation between the parties continues in the Court of Appeals.

### IV. **Claim Preclusion:**

24. Debtor has presented newly discovered evidence and witnesses that were not

---

[2] Black's Law Dictionary definition of litigation: "A judicial controversy. A contest in court of justice, for the purpose of enforcing a right."

available to Debtor during the State Foreclosure action which also supports Debtor's assertion of DLJ's fraud upon the State court.

25. Under New Mexico law, claim preclusion bars re-litigation of a claim if four elements are met: (1) identity of parties or privies; (2) identity of capacity or character of persons for or against whom the claim is made; (3) the same cause of action; and (4) the same subject matter. *Brannock v. Lotus Fund*, 367 P.3d 888, 896 (N.M. Ct. App. 2015). (emphasis added)

26. Claim preclusion is defeated in this instant case due to the fact that the same "cause of action"[3] is not present. With regard to the request of the Debtor in the Objection, no legal theory can be applied to a cause, as not referred to by DLJ. Debtor is not the movant of the Motion to Relief and is only defending on the points relating to standing of DLJ regarding the sustainability of said standing and a motion that has no merit.

27. "If the causes of action in the two proceedings are different, *res judicata* is inapplicable. See *Bank of Santa Fe v. Marcy Plaza Assocs.*, 131 N.M. 537, 540, 40 P.3d 442, 445 (Ct.App.2001)" *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d 1278 (D.N.M. 2011).

28. Moreover, Debtor's Objection does not have the element of the "same subject matter" as its' moving request clearly refers to the factors of the Motion for Relief itself and not the State Foreclosure action.

V. **Issue Preclusion:**

29. Collateral estoppel (issue preclusion) arises when the claim (cause of action) at the bar has not been litigated, but the exact issue that is now before the court has been raised and

---

[3] Cause of Action: to signify the matter of the complaint or claim on which a given action is in fact grounded (Black's Law Dictionary 2nd Ed.)

litigated in an earlier action or proceeding. See *U.S. v. Wells*, 347 F.3d 280, 285 (8th Cir. 2003)

30. The requirements that must be satisfied before the doctrine of collateral estoppel is applied are similar to those for *res judicata*, but there are differences. First, the issues in the first and second litigation must be identical and must have been before a court. Second, the issue must have been actually litigated. Third, a final judgment must have been rendered, ultimately deciding the issue in question.

31. In this instant action, the first element is not satisfied as evidence is in dispute as evidenced by the Appeal proceeding. As to the second element, Debtor has raised new evidence which has not been litigated. And as to the third element, although a final judgment has been rendered by the State court, currently there is no finality as litigation continues in the Court of Appeals.

32. Therefore, issue preclusion is not appropriate for this instant case.

## VI. Rooker Feldman Doctrine:

33. Debtor neither seeks to set aside nor has asked the Court to invalidate a state court judgment or order. Thus, *Rooker-Feldman* does not apply.

34. In Bolden v. City of Topeka, Kan., 441 F.3d 1129 (10thCir. 2006), the Tenth Circuit held:

> "Rooker-Feldman does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment. A suit on such claims could not be characterized as an "appeal" of the state-court judgment, which is the core concern of *Rooker-Feldman*." *Gonzales v. Geer, Wissel, Levy & Hartwell, P.A. (In re Siebel)*, No. 17-10827 j7, at *5 (Bankr. D.N.M. May 17, 2018)

35. In *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d at 24-25 (1st Cir. 2005) ), the First Circuit held that state proceedings have "ended" for purposes of the *Rooker-Feldman* doctrine in three situations: (i) when the

highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (ii) the state action has reached a point where neither party seeks further action; or (iii) the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions remain. Citing *Dibble v. Wells Fargo Bank*, 226 F. Supp. 3d 1226, 1229 (D.N.M. 2016)

36. To further support Debtor's position, and as stated in the United States Court of Appeals for the Tenth Circuit opinion, they have clarified that "the *Rooker–Feldman* doctrine only applies to cases brought 'after the state proceedings have ended.'" *Guttman v. Khalsa*, 446 F.3d at 1031–32 (holding that state court proceedings had not ended and that the *Rooker-Feldman* doctrine did not apply). *Id.*

37. Therefore, in its' Memorandum Opinion and Order "the Court concluded that the *Rooker-Feldman* doctrine was not implicated, because state court proceedings were ongoing." *Id.*

38. With regard to subject matter jurisdiction, the Exxon Court explained that *Rooker-Feldman* does not stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit on that denies a legal conclusion that a state court has reached in a case to which he was a party..., then there is a jurisdiction and state law determines whether the defendant prevails under the principles of preclusion'" *Id.* at 293 (quoting *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993) and also citing with approval *Noel v. Hall*, 341 F.3d 1148, 1163–64 (9th Cir. 2003)) *Klayman v. DeLuca*, CASE NO.:15-CV-80310-KAM, at *7 (S.D. Fla. Mar. 15, 2016)

39. As referenced herein above, Debtor asserts that the State Foreclosure action has

not reached finality.

## VII. Extrinsic Fraud and Fraud Upon the Court

40. Debtor obtained new evidence in or about October 2019 which was not available to Debtor during the proceedings of the State Foreclosure action. "[A] new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts"). *Goodwin v. Hatch*, Civil Action No. 16-cv-00751-CMA-KLM, at *10 (D. Colo. Jan. 12, 2018)

41. Debtor alleges that Movant was aware of the Loan Level Data, which was obtained from the CTS Link Online Portal[4] by Debtor's expert witnesses, which shows that DLJ is not the owner of Debtor's Loan. Debtor further alleges that DLJ deliberately withheld this information from the court.

42. Debtor alleges that he was free from fault, neglect, or inattention in not being able to obtain this information at the time. *Reding v. Reding*, 836 S.W.2d 37, 43 (Mo. Ct. App. 1992)

43. Moreover, "[e]xtrinsic fraud is fraud that could not have been ruled on by the court rendering the judgment. Reynolds, *supra*, at 422-23" *Thoma v. Thoma*, 123 N.M. 137, 143 (N.M. Ct. App. 1997)

## CONCLUSION

44. Debtor's response to the Motion For Relief requests that the Court deny "the relief sought in the Motion" and find that DLJ did "not have standing to bring" said motion.

45. Debtor only provided details of the State Foreclosure action as background and did not request this Court to rule on the validity of that judgment. In other words, Debtors is not

---

[4] Description from the login page: CTSLink Direct is a private service of Wells Fargo Bank, N.A. It is intended for the exclusive use of the employees and business partners of Wells Fargo Bank, N.A. All other access and usage is strictly prohibited.

seeking a review of the state court judgment.

46.  The requests of rulings through claim and issue preclusion, and the *Rooker-Feldman* doctrine are not before this Court with respect to the Motion for Relief.

47.  Debtor refers to his Adversary which will address Debtor's assertion that DLJ and others perpetrated fraud upon the court.

48.  Motion for Relief goes against the purposes of the upcoming Reorganization Plan.

**WHEREFORE**, based on the foregoing, Debtor now respectfully asks and moves this Honorable Court to:

A. Deny the relief sought in the Motion; and

B. Grant other relief the Court deems just and proper, including attorney fees and costs.

Respectfully submitted

Dated this 7th day of December 2020.

Hume Law Firm

By_____
James Hume
Attorney for Debtor
P.O. Box 10627
Alameda, NM 87184-0627
Telephone: (505) 888-3606
james@hume-law-firm.com

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via CM/ECF Filer automatic e-mail notification to the U.S. Trustee and any party who filed a Request for Notice with the Court for electronic notification, in addition to the attorney listed below.

Michael D. Mazur, Esq.,
Attorney for DLJ Mortgage Capital, Inc.,
Rose L. Brand & Associates, PC,
7430 Washington Street NE
Albuquerque, NM 87109
Telephone: (505) 833-3036

michael.mazur@roselbrand.com

On this 7th day of December 2020.

_____
James Hume, Esq.