UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  MICHAEL JACQUES JACOBS,                    No. 19-12591-j11

Debtor.

**MEMORANDUM OPINION**

The Court held a final hearing on the merits of the Motion for Relief from the Automatic

Stay and for the Abandonment of Property; Motion for In Rem Relief Pursuant to 362(d)(4) by

DLJ Mortgage Capital, Inc. ("Motion for Relief from Stay" – Doc. 27) and the Debtor's

Objection to Claim #6 (DLJ Mortgage Capital, Inc.) ("Claims Objection" – Doc. 96) and took

the matters under advisement.[1] For the reasons explained below, the Court will deny stay relief

under 11 U.S.C. §§ 362(d)(1) and (2),[2] grant in rem stay relief to DLJ Mortgage Capital, Inc.

("DLJ Mortgage") under § 362(d)(4), and overrule Debtor's objection to DLJ Mortgage's claim.

FACTS

Debtor has filed three bankruptcy cases, and his non-filing spouse, Ruby Handler Jacobs,

has filed five bankruptcy cases. A summary of those cases is as follows:

| No. | Debtor | Case Number | Chapter | Filing Date | Disposition |
|-----|--------|-------------|---------|-------------|-------------|
| 1 | Ruby Handler a/k/a Ruby Adriatico | 1:98-bk-27664-AG Central District of California (Exhibit 29) | 7 | 12/29/98 | Discharge entered on 4/16/99 |
| 2 | Ruby Jacobs (Michael Jacobs listed as non-filing spouse) | 11-14707-j7 District of New Mexico (Exhibit 30) | 7 | 10/28/11 | Discharge entered on 2/6/12 |

---

[1] After the close of evidence, the Court permitted the parties to file supplemental briefs on the limited issue of the appropriate valuation date for purposes of determining equity under 11 U.S.C. § 362(d)(2)(A). *See* Order Permitting Supplemental Briefing (Doc. 154). Debtor and DLJ Mortgage each filed a supplemental brief. *See* Creditor's Brief Addressing the Appropriate Date on Which the Subject Property Should be Valued ("Creditor's Brief" - Doc. 156) and Supplemental Brief ("Debtor's Brief" - Doc. 157).

[2] This and all future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

| 3 | Ruby Handler Jacobs (Michael Jacobs listed as non-filing spouse) | 12-10748-j13 District of New Mexico (Exhibit 31) | 13 | 2/28/12 | Dismissed 6/7/12 |
|---|---|---|---|---|---|
| 4 | **Michael Jacques Jacobs** (Ruby Handler Jacobs listed as non-filing spouse) | 12-14163-t13 District of New Mexico (Exhibit 32) | 13 | 11/13/12 | Dismissed 1/7/13 |
| 5 | Ruby Handler Jacobs (Michael Jacobs listed as non-filing spouse) | 18-11829-t13 District of New Mexico (Exhibit 34) | 13 | 7/24/18 | Dismissed 9/18/18 |
| 6 | Ruby Handler Jacobs (Michael Jacobs listed as non-filing spouse) | 18-12634-t13 District of New Mexico (Exhibit 35) | 13 | 10/24/18 | Dismissed 1/14/19 |
| 7 | **Michael Jacques Jacobs** f/d/b/a Michael Jacobs Photojournalism (Ruby Jacobs listed as non-filing spouse) | 19-10685-t13 District of New Mexico (Exhibit 37) | 13 | 3/27/19 | Dismissed 10/2/19 |
| 8 | **Michael Jacques Jacobs** f/d/b/a/ Michael Jacobs Photojournalism (Ruby Jacobs listed as non-filing spouse) | 19-12591-j11 District of New Mexico | 11 | 11/13/19 | Pending |

Debtor testified that he is aware of his spouse's bankruptcy filings only because of the documents DLJ Mortgage provided him in connection with the hearing on the Motion for Relief from Stay.

Debtor's residence is located at 800 Calle Divina NE, Albuquerque, NM 87113 (the "Property"). Since at least October 2011, the Property has been Debtor's and his spouse's principal residence. Debtor is self-employed as a photographer. He has a photography studio in the Property.

To acquire the Property, Ruby Handler Jacobs executed an Adjustable Rate Note (the "Note") dated November 9, 2005 in the principal amount of $308,000. *See* Exhibit 1. Debtor did not execute the Note. To secure the Note, Debtor and Ruby Handler Jacobs executed a mortgage on the Property (the "Mortgage"). Debtor crossed out the word "Borrower" under his signature

line on the Mortgage. *See* Exhibit 2. The loan went into default in October of 2011. No payments have been made on the Note or Mortgage since October of 2011. *See* Exhibit 14. Following the default, DLJ Mortgage made escrow advances for insurance and property taxes to protect its interest in the Property. *Id*.[3]

After the loan went into default, on October 28, 2011 Ruby [Handler] Jacobs filed a chapter 7 case, No. 11-14707-j7 ("Case 2").[4] *See* Exhibit 30.[5] She listed Debtor as her non-filing spouse. Ruby [Handler] Jacobs was granted a discharge in Case No. 2 on February 6, 2012, which discharged her personal liability under the Note. That chapter 7 case was closed on February 21, 2012. Shortly thereafter, on February 28, 2012, Ruby Handler Jacobs filed a chapter 13 case, No. 12-10748-j13 ("Case 3"). *See* Exhibit 31. Ruby Handler Jacobs listed Debtor as her non-filing spouse. On June 7, 2012, the Court entered an order granting the Chapter 13 trustee's motion to dismiss that chapter 13 case because Ms. Jacobs failed to file a plan or amended schedules as ordered by the Court. While Cases 2 and 3 were pending, DLJ Mortgage was prevented by the automatic bankruptcy stay from commencing an action to foreclose the Mortgage.

On October 5, 2012, DLJ Mortgage filed a complaint for in rem foreclosure of the Property in the Second Judicial District Court, State of New Mexico, County of Bernalillo, styled *DLJ Mortgage Capital, Inc. v. Ruby Handler Jacobs a/k/a Ruby Jacobs, Michael Jacobs, et al.*, Case No. D-2020-CV-2012-09237 (the "State Court Action"). *See* Exhibit 8.[6]

---

[3] Debtor is a disabled veteran. At some point he obtained a property tax exemption for the Property.
[4] The first bankruptcy case was a bankruptcy case Ruby Handler filed in California in 1998 and is not relevant to the issues before this Court. *See* Exhibit 29.
[5] Fact findings related to documents filed in prior bankruptcy cases are based on the dockets from those cases admitted into evidence as Exhibits 30, 31, 32, 34, 35, and 37.
[6] DLJ Mortgage filed a First Amended in rem Complaint for Foreclosure in the State Court Action on October 24, 2014, adding Selene Finance LP as a named plaintiff. *See* Exhibit 9.

-3-

About a month later, on November 13, 2012, Debtor commenced a chapter 13 case, No. 12-14163-t13 ("Case 4"). *See* Exhibit 32. Debtor listed Ruby Handler Jacobs as his non-filing spouse. Case 4 ended in dismissal because Debtor failed to timely file the required documents under § 521. Debtor sought to set aside the dismissal of Case 4 and requested an extension of time to file the past due documents. On January 30, 2013 the Court denied that request, finding, among other things, that Debtor had not timely filed most of his bankruptcy schedules, the statement of financial affairs, or a chapter 13 plan and had not timely started making plan payments as required by the Bankruptcy Code. *See* Exhibit 33. Debtor testified that he filed Case 4 because of a home in Los Angeles that eventually sold through a short sale, and that once that happened, he ended the bankruptcy. Given the timing of Case 4 in relation to commencement of the State Court Action and what transpired in Case 4, the Court does not find that testimony credible. Further, the docket in Case 4 does not reflect entry of an order authorizing a sale of property in California or modifying the stay to allow property to be sold. While Case 4 was pending, DLJ Mortgage was prevented by the automatic bankruptcy stay from prosecuting the State Court Action.

Following a trial on the merits held in the State Court Action on August 31, 2016, the New Mexico District Court for the Second Judicial District ("State Court") entered Findings of Fact and Conclusions of Law on July 13, 2017. *See* Exhibit 11. On June 5, 2018, the State Court entered a foreclosure judgment in the State Court Action (the "Foreclosure Judgment") foreclosing the Mortgage against the Property and authorizing the plaintiffs in the State Court Action to conduct a foreclosure sale. *See* Exhibit 12.

About a month and a half after entry of the Foreclosure Judgment, on July 24, 2018, Ruby Handler Jacobs commenced a chapter 13 case, No. 18-11829-t13 ("Case 5"). *See* Exhibit

34. Ruby Handler Jacobs listed Debtor as her non-filing spouse. On the same day, July 24, 2018, a Notice of Bankruptcy was filed in the State Court Action, and a week later, on July 31, 2018, a notice of postponement of foreclosure sale was filed in the State Court Action. *See* Exhibit 13. On August 27, 2018, the Chapter 13 trustee filed a motion to dismiss Case 5 for failure to file bankruptcy schedules and a statement of financial affairs, failure to provide the trustee with financial documents, and failure to timely file a chapter 13 plan. On September 5, 2018 Ms. Jacobs filed a motion to voluntarily dismiss the chapter 13 case, and Case 5 was dismissed on September 18, 2018.

About five weeks later, on October 24, 2018, Ruby Handler Jacobs filed another chapter 13 case, No. 18-12634-t13 ("Case 6"). *See* Exhibit 35. Ruby Handler Jacobs listed Debtor as her non-filing spouse. On the same day, a Notice of Bankruptcy was filed in the State Court Action, and about two weeks later, on November 6, 2018, a notice of postponement of foreclosure sale was filed in the State Court Action. *See* Exhibit 13. On November 21, 2018, the Chapter 13 trustee filed a motion to dismiss Case 6 for failure to file schedules and a statement of financial affairs, failure to provide the trustee with financial documents, and failure to timely file a chapter 13 plan. On January 14, 2019, the Court granted the trustee's motion to dismiss. On February 15, 2019, Ms. Jacobs filed a motion to reinstate the bankruptcy case. On March 27, 2019, the Court denied the motion to reinstate, and on April 11, 2019 denied a motion to reconsider the order denying the motion to reinstate. *See* Exhibit 36. Case 6 was closed on May 1, 2019.

On March 27, 2019, about two months after dismissal of Case 6, Debtor commenced a chapter 13 case, No. 19-10685-t13 ("Case 7"). *See* Exhibit 37. Debtor listed Ruby Handler Jacobs as his non-filing spouse. On April 30, 2019 the Chapter 13 trustee filed a motion to dismiss Case 7 for failure to file schedules and a statement of financial affairs, failure to provide

the trustee with financial documents, and failure to timely file a chapter 13 plan. Debtor filed a chapter 13 plan on May 13, 2019, forty-eight days after the commencement of Case 7.[7] On May 14, 2019, the chapter 13 trustee filed a second motion to dismiss based on Debtor's failure to file schedules and statements, failure to provide the Chapter 13 Trustee with financial documents and information, and failure to timely file a chapter 13 plan. On August 13, 2019, DLJ Mortgage filed a motion for relief from stay to permit it to conduct a foreclosure sale in the State Court Action. On October 2, 2019, the Court granted the Chapter 13 trustee's motion to dismiss thereby terminating the stay. Notices of postponement of a foreclosure sale were filed in the State Court Action on April 17, 2019, May 28, 2019, July 23, 2019, and September 7, 2019. *See* Exhibit 13.

About five weeks after dismissal of Case 7, on November 13, 2019 (the "Petition Date"), Debtor filed the chapter 11 case now pending before this Court, No. 11-19-12591-JA ("Case 8"). *See* Doc. 1. Debtor listed Ruby [Handler] Jacobs as his non-filing spouse. A notice of bankruptcy was filed in the State Court Action on November 19, 2019. *See* Exhibit 13. Notices of postponement of a foreclosure sale were filed in the State Court Action on November 14, 2019, January 16, 2020, and March 24, 2020. *Id.* The March 24, 2020 notice of postponement of sale was the tenth notice of postponement of sale of the Property filed in the State Court Action.

In the chapter 11 case pending before this Court, Debtor scheduled three secured claims, all secured by the Property; one priority unsecured debt to the Department of Veterans Affairs in the amount of $16,382,80; and seven non-priority unsecured debts totaling $18,912.48 (mostly

---

[7] Fed. R. Bankr. P. 3015(b) provides, in relevant part:

> The debtor may file a chapter 13 plan with the petition. If a plan is not filed with the petition, it shall be filed within 14 days thereafter, and such time may not be further extended except for cause shown and on notice as the court may direct.

Debtor did not receive an extension of the deadline to file a chapter 13 plan.

credit card debt). *See* Exhibit 6, Schedules D and E. Debtor scheduled all eight unsecured debts as disputed debts. Debtor's principal purpose for filing this bankruptcy case was to prevent DLJ Mortgage from conducting a foreclosure sale of the Property.

Debtor testified that he has tried to settle with DLJ Mortgage many times since the filing of the State Court Action. He testified that he would like to find a new lender and pay off DLJ Mortgage. There is no evidence before the Court showing that Debtor has applied for any loans to payoff DLJ Mortgage's loan or that his obtaining such a loan is feasible. Debtor testified further that he filed this chapter 11 case to facilitate negotiations with DLJ Mortgage because his efforts to negotiate and settle with DLJ Mortgage outside of bankruptcy have been unsuccessful. Debtor also testified that his other bankruptcy cases were necessary because he had other debts to address. Debtor has made post-petition deposits of the estimated Mortgage payments to his counsel's trust account totaling $25,000.

By filing seven bankruptcy cases, Debtor and his spouse have avoided foreclosure of the Property despite their not having made a single mortgage payment on the Property since October 2011. Cases 2 and 3 delayed commencement of the State Court Action during a time the Note was in default. Commencement of Case No. 4 delayed prosecution of the State Court Action. Commencement of Cases 5, 6, 7, and 8 after entry of the Foreclosure Judgment all resulted in the postponement of foreclosure sales of the Property.

The Court finds that Debtor or Ms. Jacobs filed Cases 2, 3, 4, 5, 6, 7, and 8 in a coordinated effort to take advantage of the automatic stay and prevent foreclosure of the Property as long as possible without the Debtor or Ms. Jacobs refinancing the DLJ Mortgage loan or bringing the Mortgage current over time, and to continue to reside in the Property while avoiding making mortgage payments for many years. The Court makes this finding based on (a) the

timing of Cases 2 and 3 in relation to the default under the Note; (b) the filing of Case 4 soon after commencement of the State Court Action and the dismissal of Case 4 based on Debtor's failures to comply with Bankruptcy Code requirements; (c) the commencement of Cases 5, 6, 7, and 8 after entry of the Foreclosure Judgment at times when foreclosure sales of the Property were scheduled, each bankruptcy case having caused postponement of a foreclosure sale; (d) dismissal of Cases 3, 4, 5, 6, and 7, which are all unconfirmed chapter 13 cases that were dismissed as a result of the Debtor's or Ms. Jacobs' failures to comply with Bankruptcy Code requirements; (e) the number of bankruptcy cases filed; (f) Debtor's failure to file a plan in the pending chapter 11 case (Case 8) despite its pendency for over 18 months as of the entry of this Memorandum Opinion; and (g) no payments having been made on the Mortgage for about nine and a half years. The Court does not find credible Debtor's testimony that he was unaware of his spouse's prior bankruptcy filings until  DLJ Mortgage provided him with its exhibits in connection with the Motion for Relief from Stay or that he filed his prior bankruptcy cases to deal with other debt and not to delay foreclosure of the Property.

DLJ Mortgage filed its Motion for Relief from Stay on April 2, 2020. *See* Doc. 27. Debtor objected to the Motion for Relief from Stay, asserting, among other things, that DLJ Mortgage lacks standing to prosecute the Motion for Relief from Stay. *See* Doc. 33. DLJ Mortgage then filed a Motion for Issue/Claim Preclusion (the "Preclusion Motion" – Doc. 94) asking the Court to determine that the State Court Judgment and related Findings and Conclusions entered in the State Court Action have preclusive effect. The Court granted the Preclusion Motion, concluding that the State Court Judgment and related Findings and Conclusions preclude Debtor from asserting that DLJ Mortgage lacks standing to seek relief from the automatic stay. *See* Memorandum Opinion and Order – Docs. 117 and 118. Debtor filed

a motion to reconsider the Court's decision, which the Court denied. *See* Doc. 148. At the final hearing on the Motion for Relief from Stay, held April 22, 2021,[8] Debtor continued to assert that DLJ Mortgage does not actually own the Note and Mortgage. Debtor maintains that he will ultimately be able to set aside the Foreclosure Judgment in the State Court Action. That judgment is on appeal.

DLJ Mortgage filed a proof of claim for a secured claim in the amount of $497,457.45 as of the Petition Date. This figure consists of a principal balance of $324,305.93, interest of $82,162.64, fees and costs of $25,253.40, and an escrow deficiency for funds advanced in the amount of $47,066.93, and includes interest on the judgment amount entered in the State Court Action at the rate of 3.5% per annum from May 7, 2016 through the Petition Date. The proof of claim reports that the amount necessary to cure the pre-petition arrearage as of the Petition Date is $239,195.44. Debtor objected to DLJ Mortgage's claim. *See* Doc. 96.

A foreclosure title search report performed in connection with the State Court Action shows several liens against the Property, including claims of lien filed by the Vista Del Norte Homeowners' Association, Inc. and several transcripts of judgment. *See* Exhibit 5. Debtor scheduled Vista Del Norte Homeowners' Association, Inc. with a secured claim of $2,316.00. *See* Exhibit 6. There is no evidence before the Court regarding the amount of unpaid debt secured by the other liens. Mr. Jacobs testified that he believes the other transcripts of judgment were "disposed of" in a prior chapter 7 bankruptcy case, although the dockets in the prior cases do not reflect avoidance of any liens.

In the chapter 11 case pending before this Court, Case 8, Debtor scheduled the Property with a value of $400,000. *See* Exhibit 6. Although Debtor gave testimony regarding the value of

---

[8] Both parties consented to the delay in holding the final hearing on the Motion for Relief from Stay.

the Property, the Court does not find the testimony sufficiently reliable for the Court to make a finding of the value, based on that testimony, of the Property either on the Petition Date or at some later time.

Leo F. Moisan, a licensed New Mexico residential certified appraiser, conducted an inspection of the Property on October 8, 2020 and prepared an appraisal of the Property as of November 11, 2019. *See* Exhibit 28. As of October 8, 2020, the Property was in good condition but could use some cosmetic repairs, such as fresh paint in the interior and exterior trim. Some of the carpeting was worn but serviceable. Mr. Moisan used four comparable sales to determine the Property's value. Mr. Moisan testified that in his opinion as of the date Debtor commenced this bankruptcy case, the value of the Property was $375,000. *See* Exhibit 28. Based on Mr. Moisan's testimony and his expert report admitted in evidence, the Court finds that the value of the Property, as of the Petition Date, was $375,000.

Debtor and DLJ Mortgage both agree, and the Court finds, that the Property has been increasing in value since Debtor commenced this bankruptcy case about 17 months prior to the hearing on the Motion for Relief from Stay. However, based on the evidence, the Court makes no finding regarding the amount of the post-petition increase in value. DLJ Mortgage's valuation evidence established the Property's value only as of the Petition Date. Its appraiser did not give an expert opinion of the Property's value at or near the date of the final hearing. When pressed by counsel for DLJ Mortgage as to whether the Property likely would have increased in value more than $100,000 since November 11, 2019, Mr. Moisan stated that he "would doubt it." However, Mr. Moisan also testified that without performing another appraisal he cannot give any opinion or estimate regarding the amount of appreciation of the Property after the November 11, 2019 effective date of his appraisal.

-10-

The Debtor earns his livelihood as a photojournalist and commercial photographer. He has a photography studio in the Property. Debtor testified that his earnings as a photographer are the source of revenue to fund a chapter 11 plan and are increasing. He also testified that he needs to retain the Property to maintain that revenue source to fund a chapter 11 plan. Debtor has not filed a chapter 11 plan. There is no evidence before the Court of any proposed plan treatment for claims of creditors or whether a confirmable chapter 11 plan is feasible in this case.

DISCUSSION

**I. Stay Relief**

DLJ Mortgage seeks stay relief under both subsections of § 362(d) and under § 362(d)(4). The Court will address separately each ground for stay relief upon which DLJ Mortgage relies.

A. <u>DLJ Mortgage is not entitled to relief from the automatic stay under § 362(d)(1).</u>

Under § 362(d)(1), relief from the automatic stay may be granted "for cause, including the lack of adequate protection of an interest in property . . . ." DLJ Mortgage's sole ground for stay relief under § 362(d)(1) is lack of adequate protection of its interest in the Property. The purpose of adequate protection under § 362(d)(1) "is to insure that a creditor receives the value for which it bargained pre-bankruptcy." *In re DB Cap. Holdings, LLC*, 454 B.R. 804, 816-17 (Bankr. D. Colo. 2011) (citing *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *In re Vita Craft Corp.* 625 B.R. 491, 503 (Bankr. D. Kan. 2020) (same). Adequate protection is designed to protect a secured creditor from harm caused by depreciation in the value of its security position or a threat to its collateral while the bankruptcy case is pending. *See DB Cap.*, 454 B.R. at 817; *In re Farmer*, 257 B.R. 556, 560 (Bankr. D. Mont. 2000) ("Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process.") (citation omitted). An over-secured creditor can be adequately protected by its equity

-11-

cushion, which is determined by comparing the value of the property with the amount of the movant's and any senior liens against the property. *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995) ("equity cushion" for purposes of analyzing adequate protection under § 362(d)(1) is "the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims.") (citations omitted); *In re Big Dog II, LLC,* 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019) ("[I]f an equity cushion is sufficient in amount to protect the secured creditor from post-petition decline in the value of its interest in the collateral, the equity cushion is said to provide sufficient adequate protection to the secured creditor.").

A secured creditor seeking stay relief under § 362(d)(1) based on a lack of adequate protection must establish that its collateral is declining in value or that there is a threat of such decline. *Vita Craft*, 625 B.R. at 503; *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988) ("It is common ground that the 'interest in property' referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay.").

Even if the collateral itself is not depreciating, lack of adequate protection may be established through evidence that the creditor is being harmed because its security position is being eroded or threatened by, for example, non-payment of interest accruing on a senior lien, nonpayment of property taxes having priority over the creditor's lien, lack of insurance, failure to maintain the collateral, or failure to permit periodic inspections. *In re Young*, No. 7-11-12554 JS, 2011 WL 3799245, at *7 (Bankr. D.N.M. Aug. 29, 2011). If a secured creditor has a security cushion sufficient to protect it from the declining value of its collateral, then the security cushion

-12-

may provide adequate protection for the declining value. What constitutes adequate protection is a question of fact to be determined on a case-by-case basis. *Big Dog II, LLC,* 602 B.R. at 69.

DLJ Mortgage does not lack adequate protection due to a decline in the value of its collateral. The Property has been increasing in value post-petition. The only other lack of adequate protection alleged is a threatened decline in value based on Debtor's post-petition non-payment of real property taxes and insurance. DLJ Mortgage argued that it made post-petition escrow advances for taxes and insurance, eroding its collateral position. Debtor testified that as a disabled veteran he is exempt from paying taxes on the Property. Further, DLG Mortgage has not shown it lacks adequate protection with respect to any accruing real property taxes. The Property is appreciating. While the automatic stay remains in place, DLJ Mortgage is not at risk of a tax sale, and, if it the automatic stay is lifted and DLJ Mortgage forecloses the Property, it would need to pay any outstanding property taxes from the proceeds of the sale. Regarding Debtor's failure to maintain insurance on the Property, ordinarily the Court would condition continuance of the automatic stay on Debtor either maintaining insurance or making adequate protection payments to DLJ Mortgage to reimburse it for any amounts it advanced and continues to advance for insurance after filing the Motion for Relief from Stay.[9] Regardless, there is no reason to condition the automatic stay on Debtor making adequate protection payments because, as discussed below, the Court will grant in rem stay relief with respect to the Property under § 362(d)(4).

---

[9] The evidence does not establish whether DLJ Mortgage paid for any insurance on the Property post-petition. The payment history printouts for the loan appear to show post-petition escrow charges. *See* Exhibit 14. It is unclear from Exhibit 14 whether DLJ Mortgage paid those amounts. Absent testimony explaining the significance of Exhibit 14, the Court cannot conclude that DLJ Mortgage made insurance payments to protect its interest in the Property after filing the Motion for Relief from Stay.

-13-

B.     DLJ Mortgage is not entitled to relief from the automatic stay under § 362(d)(2).

Stay relief under § 362(d)(2) requires a showing that the debtor has no equity in the property and that the property is not necessary to an effective reorganization. Section 362(d)(2) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> . . . .
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization[.]

Unlike the adequate protection provision of § 362(d)(1), which focuses on harm to a secured creditor from the decline or threatened decline in the creditor's security position, § 362(d)(2) focuses on whether keeping the stay in place will benefit other creditors if the property is sold or will benefit other creditors or the debtor in a reorganization.[10] The "no equity" requirement for stay relief under § 362(d)(2) preserves the value of the property for the benefit of unsecured creditors unless another ground exists to grant stay relief.

Because the § 362(d)(2)(A) equity analysis focuses on whether there is equity for unsecured creditors if the property is sold, unlike in the creditor's security position analysis under § 362(d)(1), equity is determined under § 362(d)(2)(A) by comparing the value that can be

---

[10] *See In re HardRock HDD, Inc.*, 569 B.R. 443, 448 (Bankr. E.D. Mich. 2017) ("'Equity' [under § 362(d)(2)] is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors.") (quoting *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 392 (6th Cir. 1986)); *In re Ebersole*, 440 B.R. 690, 699 (Bankr. W.D. Va. 2010) (same); *In re Bach*, No. 4:06 BK 01614 JMM, 2007 WL 39342, at *4 (Bankr. D. Ariz. Jan. 5, 2007) (same).

-14-

realized from the sale of the property in the bankruptcy case with the aggregate amount of all secured claims against the property.[11]

Property is necessary to an effective reorganization under § 362(d)(2)(B) if the property is needed for a reorganization that realistically is in prospect, meaning that there is a reasonable possibility of a successful reorganization within a reasonable time. *Timbers,* 484 U.S. at 375–76. Even if the debtor has no equity in the property, retention and use of the property may be necessary for the debtor or other creditors to reap the benefits of reorganization. On the other hand, if sale of the property would not benefit unsecured creditors and the property is not needed for a realistically feasible reorganization, there is no good reason to keep the property locked within the estate to the detriment of the creditor holding a lien against the property.

DLJ Mortgage bears the burden of proving that Debtor lacks equity in the Property. *See* § 362(g)(1). To establish no equity, DLJ Mortgage must prove the value of the Property as well as the amount of debt secured by the Property. The appropriate date at which value is to be determined is often crucial in determining an appropriate value. "The [Bankruptcy] Code provides neither the method of valuation to be applied in a § 362 hearing, nor the appropriate date at which this value is to be determined." *Kehm v. Citicorp Homewowners Serv., Inc. (In re Kehm)*, 90 B.R. 117, 122 (Bankr. E. D. Pa. 1988) (internal citations omitted).

Courts use different valuation dates under various Bankruptcy Code provisions depending on the purpose of the valuation. *In re Tapang,* No. 11-59479-ASW, 2015 WL

---

[11] *In re Mellor,* 734 F.2d 1396, 1400 n. 2 (9th Cir.1984) (citation omitted). *Accord Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 392 (6th Cir. 1986); *In re Miller*, No. 11-31889, 2011 WL 5075549, at *2 (Bankr. E.D. Tenn. Oct. 25, 2011); *Young,* 2011 WL 3799245, at *9; *Ebersole*, 440 B.R. at 699; *In re Rye*, 54 B.R. 180, 182 (Bankr. D.S.C. 1985).

-15-

1815697, at *1 (Bankr. N.D. Cal. Apr. 17, 2015). There is a paucity of case law on the appropriate valuation date to determine whether there is equity in the property under § 362(d)(2). Consistent with the purpose of the "no equity" requirement for stay relief under § 362(d)(2), this Court concludes that property should be valued under § 362(d)(2)(A) at or near the time of the final hearing on the motion for relief from stay.[12] Section 362(d)(2) preserves the value of the property for the benefit of unsecured creditors whether the debtor's chapter 11 reorganization effort fails and the case converts to chapter 7, the property is liquidated in the chapter 11 case, or the debtor successfully reorganizes. The benefit to unsecured creditors from a sale of the property depends on the current value of the property, not an historical value earlier in the bankruptcy case.

DLJ Mortgage's valuation evidence established the Property's value only as of the Petition Date, which was about 17 months prior to the final hearing on the Motion for Relief from Stay.[13] The Property appreciated post-petition in a rising residential real estate market. However, DLJ Mortgage's expert witness who appraised the Property could not give an expert opinion of the Property's current value. The expert witness did not update his appraisal to a date closer to the hearing, and he could not opine on the amount or percentage increase in the Property value. The Court did not find Debtor's testimony of value sufficiently reliable to support a finding of value. In its post-trial brief, DLJ Mortgage contends that Debtor would need to establish that the Property is currently worth more than $527,304.90 (representing DLJ

---

[12] At least one other court has valued the property as of the hearing date for purposes of determining equity under § 362(d)(2). *See In re EM Lodgings, LLC*, 580 B.R. 803, 809 (Bankr. C.D. Ill. 2018) ("[I]n the context of a stay relief motion [under § 362(d)(2)], value is to be determined as of or near the date of the final hearing on the motion . . . .").

[13] If that were the appropriate valuation date, DLJ Mortgage would have established Debtor's lack of equity in the Property. The evidence established that the Property is worth $375,000 on the Petition Date, which is well below DLJ Mortgage's claim of $497,457.45 as of the Petition Date.

-16-

Mortgage's claim amount plus an estimated 6% sales cost of $29,847.45 and assuming post-petition interest accrual on its claim) to establish equity in the Property. *See* Creditor's Brief, p. 3 – Doc. 156. DLJ Mortgage also points out that the total debt on the loan including post-petition amounts is at least $519,777.99. *Id.* It is not Debtor's burden to establish that there is equity in the Property. It is DLJ Mortgage's burden to show no equity. § 362(g). DLJ Mortgage easily could have obtained an update of its residential appraisal of the Property to a date closer to the final hearing date. It did not. There is simply insufficient credible evidence of the Property's value at or near the date of the final hearing from which the Court can measure Debtor's equity in the Property. DLJ Mortgage has not met its burden of establishing a lack of equity in the Property under § 362(d)(2) and is not entitled to relief from the automatic stay under that section.

        C.     <u>DLJ is entitled to in rem stay relief under § 362(d)(4).</u>

Under § 362(d)(4), stay relief can be granted with respect to the Property for a period of two years upon a showing that the debtor filed the current bankruptcy petition as "part of a "scheme to delay, hinder, or defraud creditors" involving "multiple bankruptcy filings affecting such real property."[14] In rem stay relief under § 362(d)(4) grants specific prospective protection that prevents the debtor "and any other third party with an interest in the property to obtain the benefits provided by the automatic stay in future bankruptcy cases for a period of two years." *In re Abdul Muhaimin*, 343 B.R. 159, 169 (Bankr. D. Md. 2006). The party requesting in rem stay relief under § 362(d)(4) bears the initial burden of going forward with sufficient evidence "to establish a prima facie case as to all the elements," although the party opposing stay relief bears the ultimate burden of persuasion on all issues except the debtor's equity in the property. *In re*

---

[14] Alternatively, in rem stay relief may be granted under § 362(d)(4) if the scheme to hinder, delay, or defraud creditors involved the "transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval[.]"

*Lee*, 467 B.R. 906, 920 (6th Cir. BAP 2012) (quoting *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009)); *see also Muhaimin*, 343 B.R. at 169-70 (explaining that the burden of proof under § 362(g) has generally been interpreted as a burden of persuasion, so that the party requesting stay relief bears the burden of going forward with evidence sufficient to establish *prima facie* cause for relief, even though the ultimate burden of persuasion remains with the party opposing stay relief as to all issues other than equity) (citing *In re Busch*, 294 B.R. 137, 140-41 (10th Cir. BAP 2003) (remaining citations omitted)).

The required elements for in rem stay relief are: 1) the debtor's latest bankruptcy filing was part of a scheme; 2) the debtor's scheme intended to hinder, delay, or defraud the creditor; and 3) the scheme involved either (a) a transfer of some interest in the real property at issue absent prior approval from the court or the creditor, or (b) multiple bankruptcy filings that affected the property at issue. *In re McGrath*, 625 B.R. 774, 782 (Bankr. D.N.M. 2020) (citing *In re Tejal Inv., LLC*, No. 12-28606, 2012 WL 6186159, at *5 (Bankr. D. Utah Dec. 12, 2012)).

Courts characterize "scheme" under this section as a "systemic plan" or "artful plot" that evidences a debtor's "wrongful motive or intent." *In re Hutchins,* No. 16-10262 HRT, 2016 WL 3573966, at *3 (Bankr. D. Colo. June 23, 2016) (relying on the definition of "scheme" in Black's Law Dictionary); *In re Macaulay,* No. 11-07382-DD, 2012 WL 2919154, at *3 (Bankr. D.S.C. July 16, 2012) ("A 'scheme,' for purposes of § 362(d)(4) 'is an intentional artful plot or plan to delay, hinder [or] defraud creditors.'") (quoting *In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010)); *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008) ("The word 'scheme' refers to a plan or design or an 'artful plot.'") (citations omitted). Multiple bankruptcy filings alone, even if they have the effect of delaying a creditor's foreclosure efforts, will not satisfy § 362(d)(4)'s requirement of a scheme to hinder, delay or defraud for in rem stay relief. *See Hutchins*, 2016

-18-

WL 3573966 at *3 ("The mere fact that a bankruptcy filing has the effect of hindering or delaying a scheduled foreclosure does not rise to the level of a 'scheme' to hinder, delay or defraud as contemplated by § 362(d)(4).").

Factors relevant to whether a debtor has engaged in a scheme to hinder, delay or defraud a creditor by filing multiple bankruptcy cases include: (a) serial filings to stop a foreclosure; (b) the timing of the bankruptcy filings relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales; (c) lack of changed circumstances between bankruptcy filings; (d) failure to prosecute bankruptcy cases or to honor the obligations of a debtor in the bankruptcy cases, or other bad faith conduct in connection with the bankruptcy cases; (e) the inability to fund a plan; (f) multiple bankruptcy filings by multiple parties to protect common property; and (g) failure to make any mortgage payments for a long time.[15]

Debtor testified that he abhors bankruptcy and filed this chapter 11 case on advice of counsel to force DLJ Mortgage to negotiate with him, yet he continues to contest whether DLJ Mortgage holds the Note and Mortgage. *See Hutchins*, 2016 WL 3573966 at *3 (finding that the debtor's claim that the lender was not the proper party in interest to enforce the note and deed of trust was characterized by bad faith with no factual or legal support, and granting in rem relief under § 362(d)(4). This Court already rejected Debtor's argument that DLJ Mortgage does not hold the Note and Mortgage through its Memorandum Opinion and Order granting the Issue Preclusion Motion.

---

[15] *See, e.g., Lee*, 467 B.R. at 921(discussion relating to factors (a), (b), (c) and (g)); *In re Lindsay*, No. 20-10339-JLG, 2021 WL 278317, at *7 (Bankr. S.D.N.Y. Jan. 27, 2021) (discussion relating to factors (a), (b) and (d)); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009) (discussion relating to factors (a), (b), (d), and (g)); *In re Henderson*, 395 B.R 893, 901-02 (Bankr. D.S.C. 2008) (discussion relating to factors (a), (c), (e), and (f)).

Debtor contends that his photography business is improving, that he uses the Property for his business, that he has the financial ability to make mortgage payments, and that a reorganization plan is being prepared. In his supplemental brief, Debtor requests the Court fix a 30-day deadline for Debtor to file a plan of reorganization, order Debtor to begin making adequate protection payments of mortgage principal and interest, order Debtor to provide an appraisal of the Property based on current market prices, and confer with DLJ Mortgage to determine the amounts of any encumbrances. *See* Doc. 157. This effort to resist stay relief at this late stage in the bankruptcy case rings hollow.

Debtor and his spouse together have systematically leveraged their multiple bankruptcy filings to avoid making mortgage payments on the Property for almost ten years. Through Case 2, Ruby [Handler] Jacobs was granted a discharge of any personal liability on the Note, and if the Note indebtedness is community debt (as it appears to be), Debtor's community liability on the Note was also discharged in Case 2. As a result, DLJ Mortgage can only enforce the Mortgage in rem. Debtor or his spouse have filed two bankruptcy cases to delay commencement of a foreclosure action, one bankruptcy case to delay prosecution of the State Court Action, and four bankruptcy cases to stop scheduled foreclosure sales. There is no evidence of changed circumstances between the various bankruptcy filings. Further, all five chapter 13 cases were dismissed, without a plan having been confirmed, due to the failure to prosecute the bankruptcy cases.

In this latest bankruptcy filing, Debtor has taken no meaningful steps toward reorganization. Nothing prevented Debtor from proposing a reorganization plan in the 17 months before the final hearing on the Motion for Relief from Stay. Moreover, had DLJ Mortgage been able to establish a lack of equity in the Property under § 362(d)(2)(A), Debtor would not have

-20-

been able to resist stay relief by establishing that the Property is necessary to an effective reorganization.[16]

Debtor testified at the final hearing that he continues to believe he can overturn the State Court Judgment. Under the circumstances, that is an insufficient reason for Debtor to use the automatic stay in this bankruptcy case to stay enforcement of the Foreclosure Judgment pending its appeal.

The Court finds and concludes that Debtor's and his spouse's tag team multiple bankruptcy filings affecting the Property was part of a scheme to hinder, delay or defraud DLJ Mortgage in its foreclosure efforts. DLJ Mortgage is entitled to relief from the stay under § 362(d)(4).

## II. **Objection to Claim**

Debtor's objection to DLJ Mortgage's claim is premised on the fact that the State Court Judgment was entered in favor of both DLJ Mortgage and Selene Finance, LP and only DLJ Mortgage filed a proof of claim. *See* Doc. 96. Based on that fact, Debtor reasons that both purported joint holders if the Note must bring the underlying claim together. *Id.* As this is the only basis for Debtor's objection, the Court will overrule it. The Court has already determined that DLJ Mortgage has standing to seek relief from the stay without joining Selene Finance, L.P. based on the preclusive effect of the State Court Judgment. The same reasoning holds true as to

---

[16] Under the *Timbers* standard, a debtor must show "that the property is essential for an effective reorganization *that is in prospect*," meaning that "there must be a 'reasonable possibility of a successful reorganization within a reasonable time.'" *Timbers*, 484 U.S. at 375-376 (quoting *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 370-371, and nn.12-13 (5th Cir. 1987)). The longer the case has been pending, the greater the required showing of a realistic reorganization in prospect. *Id.* Notwithstanding Debtor's testimony that he uses the Property for his business and that his business is now improving, the fact is that this case has been pending for over 18 months, and Debtor has yet to file a proposed plan of reorganization. The 120-day exclusivity period under § 1121(b) expired in March of 2020. Debtor has not demonstrated that there is a realistic reorganization in prospect.

-21-

DLJ Mortgage's right to file a proof of claim. Debtor did not object to the amount or nature of DLJ Mortgage's claim.

CONCLUSION

Based on the foregoing, the Court will grant DLJ Mortgage in rem stay relief under § 364(d)(4) and deny stay relief under §§ 362(d)(1) and (d)(2). Debtor's objection to DLJ Mortgage's claim will be denied. The Court will enter separate orders consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  May 24, 2021

COPY TO:

James Clay Hume
Attorney for Debtor
Hume Law Firm
PO Box 10627
Alameda, NM 87184-0627

Elizabeth Dranttel
Attorney for DLJ Mortgage Capital, Inc.
Rose L. Brand & Associates, PC
7340 Washington Street NE
Albuquerque, NM 87102