UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: MICHAEL JACQUES JACOBS,                 No. 19-12591-j11

Debtor.

## MEMORANDUM OPINION

On October 28, 2022, the debtor, Michael Jacques Jacobs ("Debtor"), *pro se*, filed Defen[d]ant's Motion to Alter or Amend Judgement ("Motion" – Doc. 323) under Fed.R.Civ.P. 59(e) ("Rule 59(e)").[1] Rule 59(e) is made applicable to this bankruptcy case by Fed.R.Bankr.P. 9023. Debtor asks the Court to vacate and set aside its Order Dismissing Case (Doc. 316), entered October 14, 2022, and allow Debtor to file a Third Amended Disclosure Statement and Plan. Debtor timely filed his Rule 59(e) motion within the 14-day period specified in Bankruptcy Rule 9023. For the reasons explained below, the Court will deny the Motion.

## RULE 59(e) STANDARDS

Sufficient grounds for relief under Rule 59(e) include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A request to alter or amend a judgment under Rule 59(e) is "only appropriate when a court has misapprehended the facts, a party's position, or controlling law." *In re Chameleon Ent. Sys., Inc.*, No. BAP CO-11-087, 2012 WL 5995448, at *6 (10th Cir. BAP Dec. 3. 2012)

---

[1] Debtor also filed a Memorandum in Support of Debtor's Rule 59(e) Motion to Alter or Amend Judgment ("Supporting Brief" - Doc. 321) and Exhibits (Doc. 322). Debtor served a copy of the Motion and Supporting Brief on the United States Trustee, but did not serve a notice of the deadline to object to the Motion. *See* NM LBR 9013-1(d) (general 21-day objection deadline). The United States Trustee filed a Response on December 20, 2022 (Doc. 326). Debtor filed a reply to the United States Trustee's response on January 3, 2023 (Doc. 327). DLJ Mortgage Capital, Inc. also filed a response (Doc. 324). Because DLJ Mortgage Capital, Inc. did not participate in the final hearing that resulted in the Order Dismissing Case, the Court will not consider its response in ruling on the Motion.

(unpublished) (citing *Servants of the Paraclete*, 204 F.3d at 1012). A court should not grant a Rule 59(e) motion to alter or amend a judgment to introduce error in the judgment simply because the opposing party does not respond to the motion. A motion under Rule 59(e) is not an appropriate vehicle to advance arguments that could have been raised prior to the entry of the order or judgment. *Nelson v. City of Albuquerque,* 921 F.3d 925, 929 (10th Cir. 2019) ("Rule 59(e) motions are 'not appropriate to revisit issues already address or advance arguments that could have been raised in prior briefing.'" (quoting *Servants of the Paraclete*, 204 F.3d at 1012). Rather, once the Court has entered a final judgment or order, "the public gains a strong interest in protecting the finality of judgments." *Nelson*, 921 F.3d at 929 (citation omitted). None of Debtor's grounds for relief from the Order Dismissing Case satisfy these standards.

## DISCUSSION

Following a final evidentiary hearing over four non-consecutive days on the merits of the United States Trustee's Motion to Convert Chapter 11 Case to Chapter 7, or in the Alternative, to Dismiss ("Motion to Dismiss or Convert" – Doc. 233), the Court entered a Memorandum Opinion (Doc. 314) in which it made detailed findings of fact and conclusions of law in support of its Order Dismissing Case. The Court dismissed this bankruptcy case for "cause" pursuant to 11 U.S.C. § 1112(b)[2] because Debtor's proposed Second Amended Plan,[3] filed after his chapter 11 case was pending for over two and one-half years without any payments on his home mortgage loan secured only by Debtor's principal residence, is facially unconfirmable. The Second Amended Plan cannot be confirmed because it impermissibly modifies the contractual rights of DLJ Mortgage Capital, Inc. ("DLJ"), the holder of the loan secured only by Debtor's

---

[2] All future references to "Code," "Section," and "§" are to Title 11 of the United States Code unless otherwise indicated.
[3] Debtor's Second Amended Reorganization Plan, Dated July 11, 2022 ("Second Amended Plan" - Doc. 284).

principal residence, in violation of the anti-modification prohibition in § 1123(b)(5). Section 1123(b)(5) prohibits a plan from modifying the rights of a holder of a claim secured only by the debtor's principal residence. The Court concluded that to confirm a plan, Debtor must feasibly propose to pay all preconfirmation arrearages on his home mortgage loan in full by the effective date of the plan. The Court estimated the arrearage amount to be almost $200,000.[4] The preconfirmation arrearage is substantial because Debtor has not made a mortgage payment on his home since sometime in late 2011. Instead of proposing to pay the preconfirmation arrearage in full by the effective date of the plan, the Second Amended Plan proposes that Debtor will pay $22,044.75 to DLJ as an initial payment when the plan is confirmed, and thereafter make monthly mortgage payments of $1,469.65 plus $417.75 toward arrearages, totaling $1,887.40 per month.[5] At that rate, it would take many years under the plan to cure all of the preconfirmation arrearages. After determining that Debtor's plan violates § 1123(b)(5)'s anti-modification provision because it does not provide for a cure of all pre- and post-petition, pre-confirmation mortgage arrears by the plan effective date, the Court determined further that dismissal, rather than conversion, was in the best interests of creditors and the estate.

Debtor argues the Court erred in various respects by dismissing this case.[6] The Court will address the arguments Debtor makes in support of his Rule 59(e) motion.

---

[4] Preconfirmation arrearages consist of the sum of the mortgage arrearages accruing pre-petition and mortgage arrearages accruing between the petition date and date of entry of an order confirming a plan. The petition date is the date a voluntary petition for relief was filed commencing the chapter 11 case.
[5] *See* Second Amended Plan (Doc. 284).
[6] Debtor's Supporting Brief identifies the following matters upon which he bases his Rule 59(e) argument:
    (a) The Court's statement on the first hearing day that Debtor's plan is satisfactory to be disseminated;
    (b) The Court's alleged decision to not specifically rule on U.S. Trustee's § 1112(b) motion;
    (c) The Court's alleged incorrect use of 11 U.S.C. § 1123(b)(5) in relation to § 1124(2);
    (d) The Court's failure to address Debtor's indubitable equivalent and how it relates to Debtor's Plan;

1. <u>Debtor asserts the Court erred in concluding that to confirm a chapter 11 plan Debtor must propose to pay all preconfirmation arrearages on his home mortgage loan in full by the effective date of the plan</u>.

For the reasons set forth in its Memorandum Opinion (Doc. 314), the Court concluded that the Second Amended Plan violates the anti-modification prohibition in § 1123(b)(5) because it does not propose to pay all preconfirmation arrearages in full by the effective date of the plan. Debtor asserts the Court erred in so ruling and asks the Court to correct its decision. Debtor relies principally on *In re LaPorta*, 578 B.R. 792 (Bankr. N.D. Ill. 2017) and *In re Lennington*, 288 B.R. 802 (Bankr. C.D. Ill. 2003), which support Debtor's position, and on *In re Garcia*, 276 B.R. 627 (Bankr. D. Ariz. 2002), which discusses the concepts of cure and modification. In its Memorandum Opinion, the Court discussed at length the reasoning of *LaPorta* and *Lennington* and why this Court does not find those cases persuasive. The Court also discussed the relationship between cure and modification. While there is support for Debtor's position in the caselaw, for the reasons set forth in its Memorandum Opinion at pp. 16-33, the Court will deny Debtor's request that it amend its conclusion that the anti-modification prohibition in § 1123(b)(5) requires payment of all preconfirmation arrearages on a loan secured only by the debtor's principal residence in full by the effective date of a chapter 11 plan.

---

(e) The fact that the State Court's judgment did not find the amount of arrearages in relation to DLJ;
(f) The alleged right to bifurcate DLJ's claim into secured and unsecured claims;
(g) The Court should consider newly discovered evidence previously unavailable if the Court will rely on three Monthly Operating Reports which were not in evidence at the final hearing;
(h) The Court allegedly failed to correctly assess the amount of Debtor's income;
(i) Debtor's belief that the court would hold a separate hearing on the Plan
(j) Debtor alleges unusual circumstances exist that make conversion or dismissal inappropriate; and
(k) Debtor alleges the Court did not rule in the best interest of creditors and the estate.

*See* Supporting Brief, p. 3. The Motion and Supporting Brief do not fully elaborate or explain the alleged significance of all of these alleged errors.

Debtor also argues that the anti-modification prohibition in § 1123(b)(5) does not apply to DLJ's claim secured only by his principal residence because under § 1123(a)(5)(E) a plan may modify any lien, and under § 1123(a)(5)(G) a plan may provide for the cure of a default. Section 1123(a)(5) provides that a plan must "provide adequate means for the plan's implementation, such as–" and then gives examples of how that may be done in sub-sections (A)-(J), which include curing defaults and modifying liens.

Section 1123(a)(5)(E) identifies lien modification as an example of a plan provision that could provide adequate means for the plan's implementation. Modifying a lien modifies the rights of the holder of the claim secured by such lien. Section 1123(a)(5)(E) does not override the express prohibition in § 1123(b)(5) against modifying rights of holders of a claim secured only by the debtor's principal residence. Otherwise, the anti-modification prohibition in § 1123(b)(5) would be superfluous. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)). Thus, the general provisions in § 1123(a)(5) regarding plan contents cannot be relied upon to avoid the more specific requirements of § 1123(b)(5) applicable to a subset of secured creditors whose claims are secured only by a debtor's principal residence.

2.  <u>Debtor asserts the Court erred by failing to address the concept of "indubitable equivalent" and how it relates to Debtor's Second Amended Plan.</u>

Debtor asserts the Court erred by failing to address the Bankruptcy Code's concept of "indubitable equivalent" and how it relates to Debtor's Second Amended Plan. The Court did not discuss the indubitable equivalent concept in its Memorandum Opinion because it is not relevant

-5-

Case 19-12591-j11    Doc 328    Filed 01/06/23    Entered 01/06/23 09:44:38 Page 5 of 14

to the Court's conclusion that the Second Amended Plan cannot be confirmed because it violates the anti-modification prohibition in § 1123(b)(5).

Under § 1129(a), to confirm a plan the debtor or other plan proponent must satisfy all applicable requirements stated in the sixteen subsections of § 1129(a). The indubitable equivalent concept arises in chapter 11 cases in two contexts: first, in providing adequate protection when required under §§ 362, 363, or 364 (*see* § 361(3)); and second, in assessing whether a plan is fair and equitable in its treatment of a dissenting class of secured claims (*see* § 1129(b)(2)(A)(iii)) if § 1129(a)(8) has not been satisfied).

Sections 362, 363, and 364 relate to the automatic stay; the use, sale, or lease of property; and obtaining credit, respectively. Section 361(3) provides that adequate protection required under §§ 362, 363, and 364 may be given by "granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the *indubitable equivalent* of such entity's interest in such property." (emphasis added). The requirements of § 362 (relating to the automatic stay), § 363 (relating to the use, sale, or lease of property), and § 364 (relating to obtaining credit) are not implicated with respect to whether Debtor's Second Amended Plan is facially unconfirmable because it violates the anti-modification prohibition in § 1123(b)(5).

Section 1129(a) provides that "the court shall confirm a [chapter 11] plan only if all of the following requirements is met[.]" A plan proponent satisfying an indubitable equivalent standard is not one of the requirements expressly enumerated in § 1129(a). Section 1129(b)(1) provides that if all applicable requirements for confirmation of a chapter 11 plan under the sixteen subsections of § 1129(a) are satisfied other than subsection (8),[7] the Court nevertheless

---
[7] Section 1129(a) (8) provides: "With respect to each class of claims or interests–(A) such class has accepted the plan; or (B) such class is not impaired under the plan."

may confirm the plan "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." One of the ways to satisfy the "fair and equitable" requirement of § 1129(b)(1), as an alternative to satisfying subsection (8), is for the plan to provide for the realization of the "indubitable equivalent" of their claims by holders of secured claims within an impaired class that has not accepted the plan. *See* § 1129(b)(2)(A)(iii).

Although the concept of "indubitable equivalent" may be relevant to the confirmability of a plan to the extent the requirements set forth in §§ 362, 363, 364 or § 1129(b)(2)(A)(iii), if those statutory provisions must be satisfied as a predicate to plan confirmation, the concept is wholly irrelevant to whether a plan cannot be confirmed because it violates the anti-modification prohibition in § 1123(b)(5). One of the requirements that Debtor's Second Amended Plan must satisfy for the plan to be confirmed is set forth in subsection (1) of § 1129(a). That subsection provides that the plan must "compl[y] with the applicable provisions of title 11." The anti-modification prohibition, set forth in § 1123(b)(5) of title 11, is one of the applicable provisions of title 11 that the Second Amended Plan must comply with to satisfy the requirements of subsection (1) of § 1129(a).

Section 1123 is entitled "Contents of plan." Section 1123(a) specifies what a plan "shall" contain. Section 1123(b) specifies what a plan "may" contain. Section 1123(b)(5) provides that a plan may "*modify* the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .*" (emphasis added). In other words, under § 1123(b)(5), a plan may **not** modify the rights of holders of a claim secured only by the debtor's principal residence. The Bankruptcy Code's "indubitable equivalent concept, expressed in §§ 361(3) and 1129(b)(2)(A)(iii), does not apply to compliance with the

-7-

requirement under § 1123(b)(5) that all preconfirmation arrearages be paid in full by the plan effective date.

As stated in the Memorandum Opinion at p. 24, "if the cure of arrearages takes place over time after the plan goes into effect, the plan modifies the [rights of the holder of the] claim because it negates the claimholder's contractual right to immediate payment of the full arrearage amount following acceleration of the loan after default." That is true regardless of whether the plan provides for the secured creditor's realization of the indubitable equivalent of its claim by adequately protecting the creditor's eventual payment in full. Conversely, if all preconfirmation arrearages are paid in full by the plan effective date and the plan provides that the debtor will comply with all mortgage obligations post-confirmation in accordance with the terms of the mortgage, then, 1) the due date of post-confirmation mortgage payments is deaccelerated when the plan becomes effective; 2) the claim is deemed unimpaired under § 1124; and 3) the plan does not modify the rights of the holder of the claim in violation of § 1123(b)(5). *See* the Memorandum Opinion, Doc. 34.

Debtor's Second Amended Plan does not provide for payment of all pre-confirmation arears in full by the plan effective date; consequently the Second Plan is facially unconfirmable because it impermissibly modifies the rights of a secured creditor whose claim is secured only by Debtor's principal residence in violation of § 1123(b)(5). Debtor's arguments about providing adequate protection of DLJ's claim that meets the indubitable equivalent standard have no bearing on whether the Second Amended Plan impermissibly modifies the claim in violation of § 1123(b)(5).

    3.    <u>Debtor asserts that the Court erred in several of its findings of fact.</u>

*Computation of Mortgage Arrears*

Debtor asserts that the proper mortgage payment is $989.80 per month, which reflects the modified loan payment of $1,500 under the Home Affordable Modification Program ("HAMP"), less amounts charged for insurance and taxes that Debtor asserts should be excluded from his monthly mortgage payment in calculating his prepetition and post-petition mortgage arrearages. Based on this figure, Debtor concludes that the total arrearages are $136,314.27, consisting of a pre-petition arrearage of $100,681.47 and a post-petition arrearage of $35,632.80 through December 2022.[8] The Court based its arrearage estimate on a monthly payment of $1,500, which is the payment Debtor negotiated under the HAMP and is consistent with the $1,469.05 ongoing monthly mortgage payment proposed under the Second Amended Plan. The Court also stated that the exact amount of the arrearage is not material to the Court's decision.[9] Even if the Court were to assume Debtor's calculated total pre-confirmation arrearage of $136,314.27 is correct, it does not render the Second Amended Plan confirmable. The Second Amended Plan does not propose to pay that amount to DLJ by the plan effective date. Instead, the Second Amended Plan proposes to pay the arrearage at the rate of $469.95 per month. Even if the Court were to assume that preconfirmation arrearages total $136,314.27, it would not change the Court's conclusions of law.

*Interpretation of Debtor's Income Sources*

Debtor complains that the Court misinterpreted his income sources to fund his plan. Among other things, Debtor asserts in the Motion that he anticipates an increase in his disability and social security payments and that he is revitalizing his photography business, but cannot provide evidence of anticipated revenues because he is a freelance photographer and "proof can only be provided after the fact unless he receives a contract." Motion, ¶ 20, p.10. Debtor also

---

[8] *See* Motion, p. 6.
[9] *See* Memorandum Opinion (Doc. 314), n. 40, p. 9.

-9-

Case 19-12591-j11    Doc 328    Filed 01/06/23    Entered 01/06/23 09:44:38 Page 9 of 14

points out that his proposed plan payments are not dependent upon the litigation identified in the Second Amended Plan as a source of funding for his plan, but that the potential for recovery from litigation is "between $100,000 and $10,000,000." Motion, ¶ 23, p. 11. Based on Debtor's computations, Debtor contends in his Motion that his average monthly gross income is $5,420 until December 31, 2022, and that his average monthly net income is $1,792.00 for the same period. Motion, ¶ 18, p. 9.

The Court's interpretation of Debtor's income sources in its Memorandum Opinion are not material to the Court's ultimate decision. Debtor's Second Amended Plan is unconfirmable on its face because it does not provide for payment of the total pre-confirmation arrearage by the plan effective date. Debtor's interpretation of his income sources does not demonstrate that Debtor would be able to meet that requirement. The evidence admitted at the final hearing falls well short of demonstrating that Debtor's income sources would be able to pay all pre-confirmation arrears in full by the plan effective date; nor has he proposed to make such payment.

*Reliance on Monthly Operating Reports ("MORs") filed After the Conclusion of the Final Hearing on the Motion to Dismiss or Convert*

Debtor complains that the Court's decision improperly included and relied on MORs that were not available at the time of the hearing. It is correct that the MORs for the months of July and August 2022 (Docs. 311 and 313) were filed after the commencement of final hearing on the Motion to Dismiss or Convert and were not included in the United States Trustee's exhibits.[10] The Court included the July 2022 and August 2022 MORs in its table in footnote 47 on page 10 of the Memorandum Opinion. Including or excluding those additional MORs would not alter the

---

[10] Debtor's Motion asserts that the Court added the MORs from June through August 2022. This is not correct. Footnote 47 of the Memorandum Opinion notes that no MOR was filed for June 2022. The MOR filed July 28, 2022 (Doc. 298) is a duplicate of the May 2022 MOR (Doc. 274).

Court's ruling.[11] The July 2022 and August 2022 MORs reflect higher than average total disbursements than prior months. But, even if those months are excluded from the Court's computation, the average total monthly income without deducting expenses was $5,364, similar to the approximated average monthly income of $5,000 the Court reported in its Memorandum Opinion. The exact amount of Debtor's average monthly income is not material to the Court's decision to dismiss Debtor's bankruptcy case based on the facial unconfirmability of the Second Amended Plan.

      4.      <u>Debtor asserts that the Court erred by applying § 1123(b)(5) to DLJ's claim</u>

Debtor argues that § 1123(b)(5) does not apply to DLJ's claim secured by his principal residence because under the Second Amended Plan he will grant DLJ an additional lien so that, post-confirmation, DLJ's claim no longer will be secured only by a lien against his principal residence. This argument is unavailing, despite a split in the caselaw regarding the applicable date to determine whether a claim is secured only by a debtor's personal residence for purposes of applying § 1123(b)(5)'s anti-modification provision.

The Ninth Circuit adopted what later became the majority view in *In re Abdelgadir*, 455 B.R. 896, 903 (9th Cir. BAP 2011), which held that the petition date is the determinative date for evaluating whether a secured creditor's claim is secured only by a debtor's principal residence. *Accord In re Wong*, 598 B.R. 827, 832 (Bankr. D. Md. 2019); *In re Berkland*, 582 B.R. 571, 577 (Bankr. D. Mass. 2018) (same). In *In re Proctor*, 494 B.R. 833, 840 (Bankr. E.D.N.C. 2013), the bankruptcy court held that the determinative date is when the loan was made. Regardless of which view is adopted, a debtor may not avoid application of § 1123(b)(5) by granting the

---

[11] Debtor explains that the unusually high expenses in the July and August 2022 MORs are the result of extraordinary expenses incurred in connection with Debtor's Oregon property. Motion, ¶ 16, p. 8.

-11-

secured creditor an additional lien under its plan in order to transform the claim into a claim that is no longer secured solely by the debtor's principal residence.

Debtor argues further that DLJ has impliedly consented to modification of the home mortgage loan by not relying on § 1123(b)(5) in its objection to the Second Amended Plan. But DLJ's brief on plan confirmation issues (Doc. 280) expressly argues that Debtor's plan violates § 1123(b)(5)'s anti-modification prohibition, and it is clear from DLJ's objection to the plan and the other positions DLJ has taken in this case that DLJ has not consented to Debtor modifying its claim.

       5.     <u>Debtor asserts that the Court erred in determining that dismissal was in the best interest of creditors and the estate.</u>

The Court determined that dismissal rather than conversion was in the best interest of creditors and the estate. Debtor contends this was error because he wants to file a Third Amended Plan which he believes will leave creditors in a better position than they would be if the case remains dismissed, and that "unusual circumstances" exist that should have prevented dismissal of Debtor's case. Upon a finding of "cause" § 1112(b) generally mandates dismissal or conversion, whichever is in the best interests of creditors and the estate. *See* § 1112(b) ("[T]he court shall convert . . . or dismiss . . . for cause . . . ."). But "[t]he court may not convert . . . or dismiss . . . if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor . . . establishes that . . . there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable time[.]" § 1112(b)(2)(A).

Based on the evidence before the Court at the final hearing on the United States Trustee's Motion to Dismiss or Convert, the Court concluded that dismissal, rather than conversion, was in the best interest of creditors and the estate. Debtor failed to present any evidence of unusual

-12-

circumstances at the final hearing that would allow the Court to deny the Motion to Dismiss or Convert after finding sufficient "cause" under § 1112(b) to dismiss or convert Debtor's bankruptcy case. Debtor believes the Court erred in its application of § 1123(b)(5), but despite some caselaw that supports Debtor's position this Court disagrees. Debtor has not proposed to pay all prepetition mortgage arrearages by the plan effective date; nor has he demonstrated that he can comply with that requirement. An offer to pledge additional collateral to DLJ as "adequate protection," as explained above, will not in this Court's view satisfy § 1123(b)(5)'s anti-modification prohibition.

## CONCLUSION

The Court has considered all Debtor's other arguments raised in the Motion even if the Court did not specifically address them in this Memorandum Opinion, and finds them to be without merit. The Court will enter a separate order denying Debtor's Rule 59(e) motion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: January 6, 2023

COPY TO:

Michael Jacques Jacobs
800 Calle Divina NE
Albuquerque, NM 87113

Ruby Jacobs
800 Calle Divina NE
Albuquerque, NM 87113

Jaime A. Pena
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608
Elizabeth Dranttel

Attorney for DLJ Mortgage Capital, Inc.
Rose L. Brand & Associates, PC
7430 Washington Street NE
Albuquerque, NM 87102